1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES,              )
                            )
                Plaintiff,  )          Case No. 2:07-cr-00136-RCJ-PAL
                            )
vs.                         )          **REPORT OF FINDINGS AND**
                            )          **RECOMMENDATION**
DARIAN BENEVENTO,           )
                            )          (Mtn Suppress - #22)
                            )
                Defendant.  )
_____)

This matter is before the court on defendant Darian Benevento's Motion to Suppress (#22), which was referred to the undersigned for Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), and LR IB 1-3 and IB 1-4. The court conducted an evidentiary hearing on the Motion to Suppress (#22) on January 25, 2008. At the conclusion of the hearing counsel for Benevento requested an opportunity to submit supplemental points and authorities which the court granted. The court has considered Benevento's Motion to Suppress (#22), the government's Response to the Motion to Suppress (#25), the testimony made and evidence presented at the January 25, 2008 evidentiary hearing (#32), Benevento's Supplemental Brief (#34), and the government's Response to Defendant's Supplemental Brief (#35).

## BACKGROUND

On June 27, 2007, Benevento was charged in an Indictment (#1) with Transportation of a Minor for Prostitution (Count One) and Failure to Register under the Sex Offender Registration and Notification Act (Count Two). He filed a Motion to Suppress (#22) on December 17, 2007, claiming that at the time of his arrest he was detained, seized, and searched without reasonable suspicion in violation of the Fourth Amendment. The government filed a Response (#25), arguing that the

1   encounter between Benevento and Ontario Police Corporal Troy Scutella, the arresting officer, was

2   consensual, that Scutella developed reasonable suspicion to detain Benevento after he falsely identified

3   himself, and that Scutella had probable cause to make an arrest upon learning of Benevento's two

4   outstanding warrants.  On January 25, 2008, the government filed an Errata to its Response (#31),

5   amending the factual account contained in its Response (#25) in light of Scutella's police report, which

6   the government did not receive until after it had filed its Response (#25) to the Motion to Suppress.

7   The facts surrounding the instant motion were more fully developed by Scutella's testimony at the

8   January 25, 2008 evidentiary hearing.

9   **A.     Facts**

10          Scutella testified at the January 25, 2008 hearing that at approximately 11:03 p.m. on April 9,

11  2007 he was on duty in Ontario, California traveling eastbound on Fourth Street in his patrol vehicle

12  when he passed through a green light at the intersection of Fourth and Baker streets.  While the light

13  was still green for eastbound and westbound traffic, he observed Benevento and another individual step

14  off the south curb of the intersection and begin crossing northbound against the red light.  Scutella

15  turned his vehicle around and made contact with the two individuals in a nearby parking lot.  He told

16  them that he had stopped them for crossing against the red light and asked them for identification.

17  Benevento told Scutella that he had lost his identification but identified himself as "Jerome Benevento"

18  with a date of birth of April 26, 1982.  Scutella performed a records check in his patrol unit, which

19  brought up a DMV photograph of Jerome Benevento that did not match the defendant's appearance.

20  The defendant also had a large neck tattoo which was not reflected in the DMV photograph of Jerome

21  Benevento.  Scutella asked the defendant a second time for his name and date of birth, but the

22  defendant again stated his name was "Jerome Benevento."

23          Scutella testified that he decided to take Benevento into custody at that point.  Under California

24  law, an officer may not take an individual into custody for jaywalking but may do so for giving false

25  information to an officer.  Additionally, while providing a fictitious name to an officer is a

26  misdemeanor, giving false information about a real person is a felony.  Scutella grabbed Benevento on

27  the left wrist and told him he was being placed under arrest.  After trying to flee, Benevento was taken

28  into custody and placed in the back seat of the patrol unit.  The photograph of Jerome Benevento was

still on the vehicle's computer screen, visible to the defendant.  Without being asked, the defendant told Scutella that the picture on the screen was that of his brother, who was using his name.  Benevento then apologized to Scutella for lying and produced an Oregon state identification card with his photograph and the name "David Stollery" on it.  Scutella called the number on defendant's Oregon card into dispatch, which ran a preliminary check and found that the card was a valid I.D.  Benevento was transported back to the police station, where he was booked under the name "David Stollery."  Scutella ran Benevento's fingerprints through two identification systems, which produced a positive match identifying the defendant as Darian Benevento.  The computer results revealed that Benevento was a parolee at large with two outstanding warrants.  Scutella also matched the defendant's appearance with several photos in the system and identified the defendant as Darian Benevento.

On cross examination, Scutella testified that he did not see the traffic signal facing Benevento. He also admitted that his police report did not state that he had observed Benevento stepping off the curb, only that he had seen him crossing the intersection.  Further, Scutella acknowledged that he detained Benevento when he stopped him for jaywalking, intended to detain him until he could obtain his information, and did not issue him Miranda warnings.

On redirect, Scutella testified that when he writes his police reports he only writes a general summary of the events and does not recount every detail of what happened.  Counsel for the government asked a series of questions illustrating that Scutella had testified consistently with many of the facts recounted in his report.  Scutella also testified that, although he did not actually see the light facing Benevento, it must have been red because the light was green for traffic traveling eastbound and westbound, and he had never seen an intersection allowing pedestrians to cross against oncoming traffic.

**B.    The Parties' Arguments**

In his Supplemental Brief (#34), Benevento argues Scutella's stop was equivalent to an arrest, which requires probable cause rather than reasonable suspicion, because Scutella stopped Benevento for the purpose of citing him for jaywalking.  Benevento claims Scutella did not have probable cause because Scutella wrote in his report that he only saw Benevento crossing the intersection, not stepping off the curb, admitted that he did not see the signal facing the defendant, and could only speculate

3

1  whether the signal was working properly.  Moreover, the defendant was never given Miranda warnings.

2  All statements made and items obtained as a result of the stop should therefore be suppressed as

3  violations of the Fourth and Fifth Amendments.

4       The government's Response to Defendant's Supplemental Brief (#35) contends that Scutella

5  properly conducted an investigatory traffic stop of Benevento because he observed him commit a traffic

6  violation, which is alone sufficient to establish reasonable suspicion.  The government argues that

7  Scutella saw Benevento enter the street against a red light, and even if the signal changed after the

8  defendant entered the intersection, the nearest safety zone would have been the curb he had just stepped

9  off of rather than the other side of the street.  Moreover, although the court is not required to determine

10  the reasonableness of a temporary detention when reasonable suspicion exists, Scutella's routine

11  questioning of the subjects regarding their identities was reasonably related to the scope of the traffic

12  stop.

13  **DISCUSSION**

14       The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

15  papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  Reasonable

16  and legitimate expectations of privacy are protected under the amendment.  Katz v. United States, 389

17  U.S. 347 (1967).  Also, the Fourth Amendment protects "people not places."  Id.  Evidence obtained in

18  violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the

19  poisonous tree."  Wong Sun v. United States, 371 U.S. 471 (1963).

20       The Ninth Circuit has explicitly rejected the argument that probable cause is required for traffic

21  stops.  United States v. Lopez-Soto, 205 F.3d 1101, 1104 (9th Cir. 2000).  Instead, "a police officer may

22  conduct an investigatory traffic stop if the officer has 'reasonable suspicion' that a particular person has

23  committed, is committing, or is about to commit a crime."  United States v. Choudhry, 461 F.3d 1097,

24  1100 (9th Cir. 2006) (internal quotations omitted).  The Ninth Circuit defines "reasonable suspicion" as

25  follows:

26          Officers have reasonable suspicion when specific, articulable facts . . .
        together with objective and reasonable inferences, form the basis for

27          suspecting that the particular person detained is engaged in criminal
        activity.  The reasonable suspicion analysis takes into account the totality

28          of the circumstances.  This process allows officers to draw on their own

4

1    experience and specialized training to make inferences from and
     deductions about the cumulative information available to them.

2

3    Id. (internal quotations omitted).  "A traffic violation alone is sufficient to establish reasonable

4    suspicion." Id. (citations omitted).

5         The court finds that Benevento's Fourth Amendment rights were not violated during his

6    encounter with Scutella.  First, Scutella had reasonable suspicion to conduct an investigatory traffic

7    stop.  Scutella observed the defendant step off the curb into the intersection when oncoming traffic had

8    a green light.  Scutella reasonably inferred that Benevento crossed against a red light because it is

9    reasonable to assume that the traffic signal was functioning properly based on Scutella's experience and

10   common sense.  Even if Scutella only saw the defendant crossing the intersection, rather than stepping

11   off the curb, it was nonetheless reasonable to infer that a traffic law had been broken.  Under the totality

12   of the circumstances, the court finds that Scutella's suspicion of criminal activity was based on

13   "specific, articulable facts . . . together with objective and reasonable inferences . . . ." Choudhry, 461

14   F.3d at 1100.

15        Second, the scope of the traffic stop was reasonably related to the circumstances that initially

16   justified the detention.  Police questioning which does not prolong the detention is permissible during

17   an investigatory traffic stop. United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007).  An officer

18   may determine the identity of an individual detained during an investigatory traffic stop by asking for

19   his identification and date of birth, and run a check on the individual's identification. United States v.

20   Christian, 356 F.3d 1103, 1106 (9th Cir. 2004); see Mendez, 476 F.3d at 1080-81.  Here, Scutella

21   simply asked the defendant for identification and ran a check of the identification information the

22   defendant provided.  Scutella's actions were permissible and did not prolong Benevento's detention any

23   longer than necessary to effectuate the purpose of the initial stop.  The scope of the traffic stop was

24   therefore proper under the Fourth Amendment.

25        Third, during the scope of the investigatory detention for the traffic violation, Scutella

26   developed probable cause to arrest Benevento.  After Scutella ran a check of the identification

27   information provided by the defendant, the computer system generated a DMV photograph of "Jerome

28   Benevento" which was obviously not the defendant. The uncontroverted evidence in the record is that

1    providing false information about a real person is a felony under California law.  When Scutella saw

2    that the defendant was not the person shown in the photograph generated for Jerome Benevento, the

3    facts and circumstances within Scutella's knowledge were sufficient to warrant a prudent officer in

4    believing that Benevento had committed a crime.  Hart v. Parks, 450 F.3d 1059, 1066-67 (9th Cir.

5    2006).  The court therefore finds that Scutella had probable cause to make an arrest and that

6    Benevento's Fourth Amendment rights were not violated.

7         Benevento also claims his rights under the Fifth Amendment were violated.  Statements made

8    by a defendant during custodial police interrogation are inadmissible unless Miranda warnings are

9    given.  Miranda v. Ariz., 384 U.S. 436, 444 (1966).  "Custodial interrogation" is defined as

10    "questioning initiated by law enforcement officers after a person has been taken into custody or

11    otherwise deprived of his freedom of action in any significant way."  Id.  "In determining whether an

12    individual was in custody, a court must examine all of the circumstances surrounding the interrogation,

13    but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of

14    movement of the degree associated with a formal arrest.  Stansbury v. Cal., 511 U.S. 318, 322 (1994)

15    (internal quotations omitted).  Additionally, "interrogation . . . refers not only to express questioning,

16    but also to any words or actions on the part of the police (other than those normally attendant to arrest

17    and custody) that the police should know are reasonably likely to elicit an incriminating response from

18    the suspect."  R.I. v. Innis, 446 U.S. 291, 301 (1980).

19         Here, Benevento was not "in custody" during the investigatory traffic stop because "persons

20    temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda."

21    Berkemer v. McCarty, 468 U.S. 420, 441 (1984).  A police officer making a traffic stop is permitted to

22    ask a moderate number of questions to a person to determine his identity and to obtain information.  Id.

23    Questions of this nature "cannot fairly be characterized as the functional equivalent of formal arrest."

24    Id. at 442.  As a result, no Miranda warnings were required during the traffic stop.  Scutella was

25    permitted to ask the defendant questions concerning his identity and the defendant's responses are

26    therefore admissible.  The defendant's statements made in the back of the patrol car after he was placed

27    under arrest are also admissible because they were not made in response to police interrogation.

28    Scutella testified and Benevento does not dispute that, after he saw the DMV photograph of Jerome

1  Benevento on the computer screen in the patrol car, Benevento volunteered that Jerome was his brother

2  and apologized to Scutella for lying about his identity.  Benevento then told Scutella that his name was

3  David Stollery, and produced an Oregon I.D. bearing the name "David Stollery."  Scutella did not ask

4  Benevento any questions to elicit these responses.  Since the statements were voluntary, the court finds

5  that they are admissible under the Fifth Amendment.

6        Based on the foregoing, and for good cause appearing,

7        **IT IS RECOMMENDED** that Benevento's Motion to Suppress (#22) be DENIED.

8        Dated this 29th day of February, 2008.

9

10

11                                        PEGGY A. LEEN
                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28