1
2
3
4
**UNITED STATES DISTRICT COURT**
5
**DISTRICT OF NEVADA**
6
7 | UNITED STATES OF AMERICA,                )
8 |                              Plaintiff,   )        Case No. 2:07-cr-00136-RCJ-PAL
9 | vs.                                       )        **REPORT OF FINDINGS**
                                              )        **AND RECOMMENDATION**
10 | DARIAN BENEVENTO,                        )
11 |                              Defendant.  )        (M/Dismiss Count II - Dkt. #23)
                                              )        (M/Strike Reply - Dkt. #28)
12 | _____ )

13          This matter is before the court on defendant Darian Benevento's ("Benevento") Motion to

14  Dismiss Count II of the Indictment (Dkt. #23) which was referred to the undersigned for findings and

15  recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules IB 1-3 and IB 1-4.  The court

16  has considered the Motion, the government's Response (Dkt. #24), Benevento's Reply (Dkt. #26), and

17  the arguments of counsel at the hearing on this motion.  The court has also considered the government's

18  Motion to Strike (Dkt. #28), Benevento's Response (Dkt. #29), and the government's Reply (Dkt. #30).

19                                    **BACKGROUND**

20          The grand jury returned an indictment on June 27, 2007, charging Benevento with transportation

21  of a minor for prostitution in violation of 18 U.S.C. § 2423(a) and failure to register as a sex offender in

22  violation of 18 U.S.C. § 2250(a).  Section 2250(a) is part of the Sex Offender Registration and

23  Notification Act ("SORNA" or the "Act"), which made it a federal felony offense for a sex offender

24  who is required to register under SORNA to travel in interstate commerce and then fail to register.

25      **A.    Factual and Procedural Background**

26          For purposes of this motion, Benevento and the government agree that Benevento was convicted

27  of a sex offense in California in 2003 and released from prison on parole in February 2005.  Upon his

28  release from prison, Benevento registered as a sex offender in California pursuant to California Penal

1    Code § 290.  The government asserts, and Benevento does not dispute, that on February 15, 2005,

2    Benevento signed a California form which notified him of his lifelong obligation to register as a sex

3    offender and update his registration when he changed his address or once per year if his address did not

4    change.  The form also notified Benevento of his lifelong obligation to know and understand all

5    changes in the law regarding sex offender registration.  The government asserts that shortly after

6    registering as a sex offender, Benevento absconded supervision and was a fugitive between April 2005

7    and his arrest in California on April 10, 2007.  A petition for writ of *habeas corpus ad prosequendum*

8    brought him into the District of Nevada from the custody of the Director of the Vista Detention Facility

9    in San Diego, California.  See Order granting Petition for Writ of *Habeas Corpus Ad Prosequendum*

10   (Dkt. #9) and Writ (Dkt. #10).  Benevento made his initial appearance in the District of Nevada on

11   September 17, 2007, was arraigned, and entered a plea of not guilty. See Minutes of Proceedings (Dkt.

12   #11).

13   **B.      Benevento's Constitutional Challenge of the Indictment**

14          In the current motion, Benevento seeks to dismiss Count II, arguing that SORNA is

15   unconstitutional on its face and as applied to him on nine different grounds.  First, Benevento argues his

16   prosecution under § 2250(a) violates his rights to due process because he was not on notice of his

17   obligation to register, and he could not comply with SORNA's registration requirements because no

18   state, including Nevada, had implemented a SORNA compliant registration system at the time of the

19   alleged offense.  Second, Benevento states that prosecution under § 2250(a) would violate his due

20   process rights because he did not receive notice that he was required to register under SORNA.  Third,

21   Benevento asserts that Congress lacked the power under the Commerce Clause to enact the registration

22   requirements contained in SORNA which requires persons convicted of sex offenses under state law to

23   comply with the federal registration system.   Fourth, assuming enactment of SORNA's registration

24   requirements was a constitutional exercise of Congress' Commerce Clause authority, Benevento argues

25   that § 2250(a) violates the Commerce Clause because it lacks a necessary jurisdictional element –

26   namely, that the defendant travel in interstate commerce for the purpose of failing to register under

27   SORNA.  Fifth, application of SORNA's registration requirements violates the *Ex Post Facto* Clause of

28   the Constitution for defendants, like Benevento, whose sex offenses were committed prior to the

1   enactment of the SORNA.  Sixth, SORNA violates Article I, §§ 1, 8 of the United States Constitution

2   because Congress impermissibly delegated the authority to decide whether the statute applies

3   retroactively to the Attorney General.  Seventh, the Attorney General's interim rule which applies

4   § 2250(a) retroactively to defendants like Benevento, whose convictions were sustained prior to the

5   passage of SORNA, is invalid because the Attorney General did not comply with the notice and

6   comment provisions of the Administrative Procedure Act.  Eighth, § 2250(a) is an unconstitutional

7   exercise of federal power over the states and, therefore, violates the Tenth Amendment.  Finally,

8   Benevento argues that SORNA infringes his constitutional right to travel in interstate commerce.

9
## DISCUSSION

10
### A.  Motion to Dismiss Standard of Review

11     A motion to dismiss challenges the sufficiency of an indictment to charge an offense.  United

12   States v. Sampson, 371 U.S. 75, 78-79 (1962).  "An indictment is sufficient if it contains the elements

13   of the charged crime and adequate detail to inform the defendant of the charge and to enable him to

14   plead double jeopardy."  United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982).  In determining

15   the sufficiency of the indictment, the court examines whether the indictment adequately alleges the

16   elements of the offense and fairly informs the defendant of the charge, and not whether the government

17   can prove its case.  Id. at 897.  In deciding a motion to dismiss, the court must take the allegations of the

18   indictment as true.  Boyce Motor Lines, Inc., v. United States, 342 U.S. 337, 343 n.16 (1952); United

19   States v. Afshari, 426 F.3d 1150, 1153 (9th Cir. 2005).  An indictment need not allege the

20   government's theory of the case or supporting evidence, but it must state the essential facts necessary to

21   apprise the defendant of the crime charged.  Id.

22     Rule 12 of the Federal Rules of Criminal Procedure requires a defendant to challenge a

23   defective indictment prior to trial.  See Fed. R. Crim. P. 12(b)(3)(A) & (B).  Rule 12(b)(2) permits a

24   party to raise "any defense, objection, or request that the court can determine without a trial of the

25   general issue."  Id.  A pretrial motion is generally "capable of determination" before trial if it involves

26   questions of law rather than fact.  United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th

27   Cir. 1986).  The trial court may make preliminary findings of fact necessary to decide the legal

28   questions presented by the motion, but it may not invade the province of the jury in deciding a pretrial

1   motion to dismiss.  It is also well established that "[a] motion to dismiss is not a proper way to raise a

2   defense."  United States v. Snyder, 428 F.2d 520, 522 (9th Cir. 1970).

3          Count Two of the indictment alleges Benevento violated 18 U.S.C. § 2250(a).  The essential

4   elements for a § 2250(a) offense require the government to prove: (i) the defendant is a sex offender as

5   defined by SORNA and, therefore, required to register under SORNA, 18 U.S.C. § 2250(a)(1);

6   (ii) federal jurisdiction exists either because the defendant was convicted as a sex offender under federal

7   law or because the defendant traveled in interstate or foreign commerce, 18 U.S.C. § 2250(a)(2)(A) and

8   (2)(B); and (iii) the defendant knowingly failed to register or update his sex offender registration as

9   required, 18 U.S.C. § 2250(a)(3), United States v. Hinen, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007);

10  United States v. Samuels, 543 F. Supp. 2d 669, 673 (E.D. Ky. 2008).

11         Count Two of the indictment alleges that between an unknown date in autumn 2006 to March 7,

12  2007 in the State and Federal District of Nevada, Benevento: (1) was a person who was required to

13  register under SORNA, (2) traveled in interstate commerce, and (3) knowingly failed to register and

14  update a registration as required by SORNA in violation of § 2250(a).  Benevento's motion indicates he

15  understands from the discovery produced that the government's theory in this case is that he traveled

16  from another state to Las Vegas, Nevada, between late 2006 and March 2007 and failed to register in

17  Nevada as required by SORNA.  The indictment in this case alleges the essential elements of the crime

18  of failing to register as required under SORNA and provides adequate detail to inform Benevento of the

19  charge to enable him to plead double jeopardy.  It is, therefore, sufficient.  However, Benevento

20  challenges the constitutionality of the statute on its face and as applied to him.  This is a matter capable

21  of determination before trial as a matter of law, rather than as a question of fact.  The court must,

22  therefore, examine and decide Benevento's constitutional challenges to the statute under which he is

23  charged.

24         **B.**     **Relevant Statutory Provisions**

25                **1.**     **California Penal Code § 290**

26         The parties agree that Benevento was convicted of a sex offense in California in 2003, sentenced

27  to a term of imprisonment, and that when he was released from prison, he registered as a sex offender

28  as required under California Penal Code § 290.  California Penal Code § 290 imposes a lifelong

4

1   obligation on a sex offender to register with local law enforcement within thirty days of coming into a

2   local jurisdiction, and update the registration with any change of information within ten days or once a

3   year if there are no changes.  A person convicted of a felony sex offense who fails to register under

4   § 290 is guilty of a felony punishable by imprisonment in the state prison for sixteen months, or two or

5   three years.  Section 290.018(b).

6                    **2.        Chapter 179D of the Nevada Revised Statutes**

7          In Nevada, Chapter 179D of the Nevada Revised Statutes ("N.R.S.") governs the registration of

8   sex offenders and offenders convicted of a crime against a child.  Until July 1, 2008, individuals

9   convicted of a crime against a child as defined by N.R.S. 179D.210 were required to register with a

10  local law enforcement agency and with the Division of Parole and Probation of the Department of

11  Motor Vehicles and Public Safety ("Division") if the offender resided in or was present for forty-eight

12  hours or more in the jurisdiction of a local law enforcement agency.   See N.R.S. § 179D.240.

13  N.R.S. 179D.250 required a sex offender to notify the Division of any change in address and provide

14  updated information within forty-eight hours after changing an address, and N.R.S. 179D.270 required

15  a sex offender convicted of a crime against a child to comply with these registration provisions for at

16  least fifteen consecutive years.  Violation of the offender registration provisions for an offender

17  convicted of a crime against a child was a Category D felony punishable by a term of imprisonment for

18  a minimum term of not less than one year and a maximum term of four years and/or a fine of not more

19  than $10,000.  See N.R.S. 179D.290 and N.R.S. 193.130(2)(d).

20         N.R.S. 179D.460 required sex offenders convicted of a sexual offense as defined by

21  N.R.S. 179D.410 to register with local law enforcement agencies and the Division within forty-eight

22  hours after arriving or establishing residence in Nevada.  It also required sex offenders to notify the

23  Division of any change of address and update registration information, for at least fifteen consecutive

24  years after conviction.  Violation of the provisions of N.R.S. 179D.350 to 179D.550 was also a

25  Category D felony punishable from one to four years in prison and/or a fine of not more than $10,000.

26         In 2007, the Nevada legislature repealed, revised, and expanded the provisions of Chaper 179D

27  to conform to the provisions of the Federal Adam Walsh Child Protection and Safety Act of 2006 (the

28  "Walsh Act"), P.L. 109-248, 120 Stat. 587 (codified primarily in 42 U.S.C. §§ 16901-16962).  The

1  Nevada enactments were set to become effective July 1, 2008.  However, two lawsuits were filed

2  challenging certain of the new registration and community notification provisions passed by the Nevada

3  legislature to conform to the provisions of the Walsh Act.  On June 26, 2008, Nevada State District

4  Court Judge David Wall found that the registration and community notification requirements of

5  Assembly Bill 579 would result in significant and irreparable harm to the plaintiffs and other similarly

6  situated in Clark County, Nevada, and he granted a preliminary injunction restraining and enjoining

7  enforcement of these provisions.  The order set a briefing schedule and a hearing for arguments on the

8  plaintiff's complaint for declaratory relief.  See Order granting preliminary injunction in D.P.; WL

9  Plaintiffs v. State of Nevada, et al., Case No. A564966.

10      Additionally, on June 30, 2008, the Honorable James Mahan entered an injunction in this

11  federal district in ACLU of Nevada v. Masto, Case No. 2:08-cv-00822-JCM-PAL, enjoining

12  enforcement of certain provisions of the legislative changes and setting a briefing schedule and hearing

13  on constitutional challenges to the Nevada acts which were enacted to comply with the Walsh Act.

14  Judge Mahan granted a preliminary injunction following a hearing held on September 10, 2008, finding

15  certain provisions of the new laws violated the *Ex Post Facto* clause of the United States Constitution.

16  On October 7, 2008, Judge Mahan entered a revised Order granting permanent injunction (Dkt. #77),

17  finding that the July 2007 legislative enactments of Assembly Bill 579 and Senate Bill 471, taken

18  together, redefine who is considered a "sex offender," the way in which sex offenders are classified and

19  monitored, and what restrictions apply to sex offenders.  He found that AB 579 and SB 471 do not

20  provide any procedural due process protections for people who believe they have been miscategorized

21  as sex offenders to challenge the application of AB 579 and SB 471.  He also found that the retroactive

22  application of these bills is the equivalent of new punishment and, therefore, a violation of the *Ex Post*

23  *Facto* and Double Jeopardy Clauses of the U.S. Constitution, as well as the Contracts Clauses of the

24  U.S. and Nevada Constitutions.  Finally, he found that the bills violated the Due Process Clause of the

25  U.S. Constitution.  For these reasons, he entered a permanent injunction enjoining the enforcement of

26  AB 579 and SB 471.  The Attorney General filed a Notice of Appeal (Dkt. #83) on October 29, 2008.

27  / / /

28  / / /

### 3.   The Jacob Wetterling Act

The Jacob Wetterling Act was enacted by Congress in 1994 and is commonly referred to as "Megan's Laws."  See 42 U.S.C. § 14071.  The Jacob Wetterling Act provided federal funding to states that enacted sex offender registration laws.  It also created a federal misdemeanor failure to register offense punishable by up to one year imprisonment for sex offenders who failed to register in a state where they resided, worked, or were a student.  42 U.S.C. § 14072(i).  By 1996, all states had enacted Megan's Laws in some form.  See Smith v. Doe, 538 U.S. 84, 90 (2003).

### 4.   SORNA

Congress enacted the Walsh Act on July 27, 2006.  Title 1 of the Walsh Act contains SORNA and the federal failure to register as a sex offender statute.  See 18 U.S.C. § 2250(a).  The stated purpose of the Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child victims."  P.L. 109-248.  The stated purpose of SORNA is "to protect the public from sex offenders and offenders against children" by establishing "a comprehensive national system" for the registration of sex offenders.  42 U.S.C. § 16901.  "SORNA is essentially an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states."  United States v. Ditomasso, 552 F. Supp. 2d 233 (D.R.I. 2008).

SORNA has provisions that apply to states and other provisions that apply to individuals.  The Walsh Act applies to each state, the District of Columbia, native American tribal territories, and other United States territories.  See § 16911(10), defining jurisdiction for purposes of the SORNA.  Each jurisdiction has until July 27, 2009 to substantially comply with the requirements of SORNA or lose part of its federal funding.  42 U.S.C. §§ 16924(a), 16925(a).  SORNA requires states to implement sex offender registries which must include standard information and be compatible with a national electronic data base.  42 U.S.C. §§ 16912, 16918, 16919.

In addition to establishing a national sex offender registration system, SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16913(a).  SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and

classifies all sex offenders into three different categories.  42 U.S.C. § 16911(1)-(4).  A "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact with another."  Id., § 16911(5)(A)(I).  A sex offender must initially register before completing a period of imprisonment, or not later than three business days after being sentenced if not sentenced to imprisonment.  42 U.S.C. § 16913(b).  Under § 16913(b), a sex offender must initially register:

> (1)    before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
>
> (2)    not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

Thereafter, a sex offender is required to keep his or her registration current by appearing in person in at least one jurisdiction in which the sex offender is required to register and informing the registering agency of any changes in personal information, such as a change of name, residence, or employment status.  Id. at § 16913(c).  In the event of a change of name, residence, employment, or student status, the sex offender must appear in person within three business days of the change in at least one jurisdiction where the person resides, works, or is a student to update his registration information.  42 U.S.C. § 16913(c).

Section 16913(d) of SORNA delegates authority to the Attorney General of the United States to specify the applicability of SORNA's requirements to sex offenders convicted before July 27, 2006 when SORNA took effect or its implementation in a particular jurisdiction and also to prescribe rules for the registration of any sex offender unable to comply with the initial registration provisions of SORNA.  § 16913(d) provides that:

> (d)    Initial registration of sex offenders unable to comply with subsection (b) of this section
>
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

/ / /

/ / /

/ / /

1    On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA to

2    all sex offenders regardless of when they were convicted.  See Applicability of the Sex Offender

3    Registration and Notification Act, 72 Fed. Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72

4    (2007)).  On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting

5    SORNA, ("SMART Guidelines"), 72 Fed. Reg. 30,210 (May 30, 2007).  28 C.F.R. § 72.3.  SORNA

6    also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made

7    failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten years

8    imprisonment and a $250,000 fine.  Section 2250(a) supersedes the Jacob Wetterling Act, which will be

9    repealed three years after SORNA's effective date.  42 U.S.C. § 14071, P.L. 109-248, Title I, § 129,

10   120 Stat. 600 (2006).

11   **C.    Benevento's Constitutional Challenges**

12   Benevento asserts various constitutional challenges to 42 U.S.C. § 16913, which requires sex

13   offenders convicted of state sex offenses to register under SORNA, and 18 U.S.C. § 2250(a), which

14   makes it a federal felony offense to fail to register.  In general, statutes are presumed constitutional.

15   United States v. Morrison, 529 U.S. 598, 608 (2000).  A facial challenge of a statute is "the most

16   difficult challenge to mount successfully."  United States v. Salerno, 481 U.S. 739, 745 (1987).  To

17   prevail on a facial challenge to the constitutionality of a statute, a litigant must satisfy the heavy burden

18   of showing that "no set of circumstances exists under which the [a]ct would be valid."  Id. (finding

19   defendant had not met his heavy burden of establishing the Bail Reform Act was facially

20   unconstitutional).  It is not enough to show that an act "might operate unconstitutionally under some

21   conceivable set of circumstances."  Id.

22   **1.    Due Process**

23   Benevento argues his prosecution under § 2250 violates the fair notice requirements of the Due

24   Process Clause of the Fifth Amendment.  Because no state has implemented SORNA, Benevento

25   contends he could not have been on notice of SORNA's registration requirements.  Citing United States

26   v. Dalton, 960 F.2d 121, 124 (10th Cir. 1992), he argues that it would violate the Due Process Clause to

27   prosecute him for failing to do something that is impossible to do.  He also claims he was not on notice

28   of SORNA's registration requirements because the Attorney General has not prescribed rules pursuant

9

1  to 42 U.S.C. § 16917(b).  Section 16917(b) mandates that "[t]he Attorney General shall prescribe rules

2  for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this

3  section."  Subsection (a) provides:

> An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register –
>
> (1)  inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;
>
> (2)  require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
>
> (3)  ensure that the sex offender is registered.

11  42 U.S.C. § 16917(a).

12       The government responds by urging the court to follow the decisions of other courts which have

13  rejected substantive and procedural due process challenges to SORNA and other sex offender

14  registration laws.  The government cites United States v. Templeton, 2007 WL 445481 (W.D. Okla.

15  2007); Doe v. Moore, 410 F.3d 1337, 1345 (11th Cir. 2005); Doe v. Tandeske, 361 F.3d 594, 597 (9th

16  Cir. 2004); and Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003), as examples of cases in which

17  courts have rejected due process challenges to sex offender registration systems.

18       In reply, Benevento relies on the Sentencing Commission's guidelines to support his argument

19  that no violation of SORNA can occur until a jurisdiction enacts a SORNA compliant registration

20  statute.  He also claims that prosecution under § 2250 is improper because § 2250 does not punish a sex

21  offender for failing to register as required by *state law* and that failing to register as required by state

22  law is already prohibited by the Wetterling Act, 42 U.S.C. § 14072(i)(2).  Rather, § 2250 imposes

23  criminal penalties for failing to register "as required by [*SORNA*]," which Benevento claims is

24  impossible because no state has enacted SORNA.  18 U.S.C. § 2250(a) (emphasis added).

25  Additionally, Benevento argues Nevada and California registration laws do not put him on notice of

26  SORNA's registration requirements because SORNA's registration requirements and criminal penalties

27  are more severe than those in Nevada and California.

28  / / /

10

1    He also relies on the sex offender SMART Guidelines issued by the Attorney General May 30,

2  2007.  The SMART Guidelines were promulgated by the Attorney General pursuant to SORNA's

3  direction that guidelines be provided to the states to "interpret and implement" SORNA's regulatory

4  scheme.  42 U.S.C. § 16912.  The SMART Guidelines contain a detailed discussion of how existing

5  state registries do not meet SORNA's registration standards, and thus Benevento argues that they

6  confirm that SORNA represents a regulatory scheme distinct from existing state sex offender registries.

7  SORNA's registration provisions are more onerous, and the penalties are more severe than the sex

8  offender registration systems enacted by Nevada or California and, therefore, do not provide Benevento

9  fair notice of his SORNA obligations.

10    Benevento also argues his duty to register in Nevada cannot support a criminal prosecution

11  under § 2250(a) because the government has not alleged that he received notice of his requirement to

12  register as a sex offender under Nevada law.  He cites Lambert v. California, 355 U.S. 225 (1958) to

13  support his argument that he may not be prosecuted for failing to register unless he received actual

14  knowledge of the duty to register.  Finally, he cites the Rule of Lenity, which requires construction of an

15  ambiguous statute in favor of a defendant, claiming that he could not have foreseen that § 2250(a)

16  required him to register according to state law.

17    The Due Process Clause of the Fifth Amendment provides, "No person shall . . . be deprived of

18  life, liberty, or property, without due process of law."  Among other things, the Due Process Clause of

19  the Fifth Amendment safeguards the interest in fundamental fairness through notice and fair warning.

20  Rogers v. Tennessee, 532 U.S. 451, 460 (2001).  In Lambert, the Supreme Court held that a Los

21  Angeles felon registration ordinance violated the Due Process Clause of the Fourteenth Amendment

22  when applied to a person who had no actual knowledge of her duty to register.  Benevento cites

23  Lambert to support his arguments that he may not be prosecuted under § 2250(a) in the absence of

24  proof he received actual knowledge of his duty to register under SORNA.  In Lambert, the Supreme

25  Court recognized the deeply rooted principle of law that ignorance of the law is no excuse.  355 U.S. at

26  228 (1957).  However, the court also recognized that the Due Process Clause of the Fourteenth

27  Amendment places some limits on the exercise a local government's exercise of the police power.  The

28  requirement of notice is inherent in the concept of due process and "is required in a myriad of situations

11

where a penalty or forfeiture might be suffered for mere failure to act." Id. Thus, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment required "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply" before a conviction under the Los Angeles ordinance could be upheld consistently with due process. Id. at 229. The court concluded that the ordinance violated due process as applied because the defendant had no actual knowledge of the registration requirement, and the "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." Id.

The vast majority of courts that have addressed due process challenges to a prosecution under SORNA have held that the Act does not violate a defendant's due process rights. United States v. May, 535 F.3d 912, 921 (8th Cir. 2008); Ditomasso, 552 F.Supp.2d 233; U.S. v. Gould, 526 F.Supp.2d 538 (D. Md. 2007); Hinen, 487 F. Supp.2d 747 (W.D. Va. 2007); U.S. v. LeTourneau, 534 F.Supp.2d 718 (S.D. Tex. 2008); Samuels, 543 F.Supp.2d 669; U.S. v. Lovejoy, 516 F.Supp.2d 1032 (D.N.D. 2007); United States v. Hann, __ F.Supp.2d __, 2008 WL 4067542 *7 (M.D. Tenn. 2008); United States v. Senogles, 570 F.Supp.2d 1134, 1155-59 (D. Minn. 2008); United States v. Waybright, 561 F.Supp.2d 1154, 1173-74 (D. Mont. 2008); United States v. Vardaro, __ F.Supp.2d __, 2008 WL 4155353, at *7-8 (D. Mont. 2008).

In Ditomasso, the court rejected due process arguments similar to those raised here by Benevento. Ditomasso argued that charging him with violating § 2250(a) violated his due process rights to fundamental fairness because it was impossible for him to comply with SORNA, as Rhode Island had not yet implemented a SORNA complaint registry. The court examined the language of § 2250(a) and acknowledged that, at first blush, the argument was appealing because an element of the crime of not registering is that the defendant "knowingly fails to register or update a registration as required by [SORNA]." However, on closer examination, the court concluded that the argument begs the question of what SORNA requires. The court concluded that the language of 42 U.S.C. § 16913(a) which requires a sex offender to register and keep registration current in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student makes it clear that sex offenders have a general obligation to register in their jurisdiction. The court also concluded

/ / /

1    the defendant was able to comply with SORNA's registration requirements because Rhode Island, like

2    every other state, had adopted Megan's Laws which require registration.

3           The Ditomasso decision recognized that SORNA does not specifically require sex offenders to

4    register under state law.  Addressing the defendant's argument that the statute was ambiguous, the court

5    concluded that "both the structure and purpose of the law show that Congress intended for sex

6    offenders to register in their states regardless of whether a state has fully implemented SORNA."

7    552 F.Supp.2d at 239.  The Ditomasso court carefully examined the Congressional Record in arriving at

8    its conclusion that Congress intended for sex offenders to register in their states regardless of whether

9    a state had fully implemented SORNA, finding that "any interpretation of § 2250 which allows a sex

10   offender to avoid registration in a state defies the structure and purpose of the law."  Id.

11          Similarly, the court in Hinen rejected a defendant's argument that SORNA violated his right to

12   procedural due process because he was not given actual notice that travel across state lines subjected

13   him to federal criminal penalties.  487 F.Supp.2d 747.  The court found that the fact that the defendant

14   may not have been advised of the specific requirements of SORNA did not constitute a due process

15   violation.  The court pointed out that since 1994, the Jacob Wetterling Act has required a sex offender

16   to register in his state of residence and any other state where he was employed, carried on a vocation, or

17   was a student.  See 42 U.S.C.A. § 14071(b).  The Jacob Wetterling Act also required sex offenders

18   registered in any state who move to another state to notify law enforcement authorities of their new

19   state of residence.  Id.  Because both the state where the defendant initially resided and the state where

20   he moved had sex offender registration requirements, the court concluded that "the defendant had

21   sufficient notice that failing to register as a sex offender was illegal."  Hinen, 487 F.Supp.2d at 754.

22          In LeTourneau, the court concluded the defendant had constitutionally adequate notice of his

23   duty to register as a sex offender because he was already under an obligation under state law to register

24   and update his registration if he moved to another state.  534 F.Supp.2d 718.  The defendant argued that

25   although he may have received notice of his obligation to register under state law, this was not

26   constitutionally adequate notice because he was entitled to notice of the more severe penalties imposed

27   by SORNA for failure to register.  The court rejected this argument, finding the defendant was aware

28   that failing to update his registration when moving to another state was a felony under state law.  The

13

1   court, therefore, held that his awareness that his failure to update his registration was a felony in the

2   state of his conviction qualifies as constitutionally effective notice under SORNA.

3          The court reached the same conclusion in <u>Samuels</u>. 543 F.Supp.2d 669.  There, the defendant

4   was convicted of a sex offense in New York in 1999 and was required to register as a sex offender for

5   ten years.  After he was released from prison on probation, he signed a New York state registration

6   form informing him of his duty to register as a sex offender if he moved to another state.  He moved to

7   Kentucky, failed to register, and was charged with violating § 2250(a).  It was undisputed that the

8   defendant received no notice of SORNA's registration requirements.  However, the court held that his

9   due process rights were not violated because he was on notice of his obligation under state law to

10  register and update registration and notified that if he moved to another state, he may be required to

11  register as a sex offender in his new state.

12         Finally, in <u>Lovejoy</u>, the court denied the defendant's motion to dismiss a criminal prosecution

13  under § 2250(a), finding the Due Process Clause did not require that the defendant receive actual notice

14  of SORNA's registration requirements.  516 F.Supp.2d 1032.  Because the defendant was fully aware

15  of his responsibility to register as a sex offender under state law, he had sufficient notice that failing to

16  register as a sex offender was illegal and "ignorance of the new, independent obligation under federal

17  law (SORNA) to register as a sex offender is simply no excuse." <u>Id.</u> at 1038; <u>see also</u> <u>Gould</u>,

18  526 F. Supp.2d at 544 (defendant's prior knowledge of a duty to register under state law qualified as

19  effective notice under SORNA).

20         Benevento relies on <u>Lambert</u> to support his due process and lack of adequate notice arguments.

21  In <u>Lambert</u>, the Supreme Court held that the defendant's conviction for failure to register as a felon

22  violated her due process rights because she received no prior notice of her duty to register. 335 U.S. at

23  229.  However, the Court assumed the defendant had no actual knowledge of her duty to register, and

24  there was no proof in the record that she probably received notice. <u>Id.</u> at 227, 229.  Unlike Lambert,

25  Benevento is not a "person, wholly passive and unaware of any wrongdoing" who is charged in a

26  criminal case.  Upon his release from prison on parole, he registered as a sex offender under California

27  law and was notified of his lifelong obligation to register and to update his registration and to know and

28  understand all changes in the law regarding sex offender registration.  The Jacob Wetterling Act of

14

1    1994 required Benevento to register as a sex offender in any state in which he resided, worked, or was a

2    student.  By 1996, after passage of the Jacob Wetterling Act, all fifty states had enacted sex offender

3    registration acts or Megan's Laws in some form.  <u>Smith v. Doe</u>, 538 U.S. at 90.

4          Benevento had sufficient notice that failure to register and update his registration was illegal

5    under SORNA because of the long-standing state registration laws.  <u>See</u> <u>May</u>, 535 F.3d at 921 (finding

6    defendant who admitted in plea agreement he had an obligation under state laws to register and keep his

7    registration current when moving between jurisdictions received "plenty of information" about his

8    registration obligations and, therefore, his due process rights were not violated); <u>see</u> <u>also</u> <u>United States</u>

9    <u>v. Torres</u>, __ F.Supp.2d __, 2008 WL 3974307 at *16 (holding that actual notice of SORNA's federal

10   registration requirements is not necessary and that knowledge of state reporting requirements is

11   sufficient to comport with the Due Process Clause) (collecting cases).

12         Additionally, since at least February 28, 2007, when the Attorney General promulgated an

13   interim rule applying SORNA to all sex offenders regardless of when they were registered, Benevento

14   has had constructive notice that his failure to register after traveling in interstate commerce was a

15   violation of § 2250(a) and a felony.

16         The court finds that Nevada's failure to enact a SORNA compliant registration system prior to

17   the time of Benevento's arrest does not preclude his prosecution for failing to register as a sex offender

18   under SORNA.  Sections 16913(a) makes SORNA's registration requirements applicable to all sex

19   offenders regardless of whether a state has implemented a SORNA compliant registration system.  The

20   language of § 2250(a) which imposes an obligation to register "as required by [SORNA]" does not

21   condition the duty to register on a state's implementation of SORNA.  For purposes of this motion,

22   Benevento does not dispute that he is a sex offender as defined by SORNA, *i.e.*, that he is an individual

23   who has been convicted of a sex offense or criminal offense that has an element involving a sexual act

24   or sexual contact with another.  <u>See</u> 42 U.S.C. § 16911(1)–(4) and § 16911(5)(A)(i).  Therefore, he was

25   required to comply with § 2250(a) by registering and updating his registration as described in § 16913,

26   which requires a sex offender to "appear in person . . . and inform that jurisdiction of all changes in the

27   information required for that offender in the sex offender registry."  42 U.S.C. § 16913(c).

28   / / /

1        Title 42 U.S.C. 16911 defines a "sex offender registry" as "a registry of sex offenders, and a

2    notification program maintained by a jurisdiction."  Therefore, the "sex offender registry" referred to in

3    § 16913 is the sex offender registry that a jurisdiction maintains, whether or not it complies with

4    SORNA.  The court concludes that § 2250(a) requires a sex offender who travels in interstate

5    commerce to register and update his sex offender registration.  Because every state has had a sex

6    offender registry since at least 1996 and because Benevento is alleged to have failed to register between

7    Autumn 2006 and March 7, 2007, it was not impossible for Benevento to register in Nevada as he

8    claims.

9        The Federal Sentencing Guidelines do not compel a contrary result.  The guideline Benevento

10   cites, § 5D1.3(a)(7), governs the conditions of supervised release the court must impose on an

11   individual who is convicted of a sex offense, and does not advance Benevento's due process arguments.

12   The Sentencing Commission has not, as Benevento claims, "determined that individuals cannot be

13   required to register in a state sex offender registry based on SORNA unless the state has actually

14   enacted SORNA."  Reply at 2.  Rather, § 5D1.3(a)(7) dictates the conditions of release a court must

15   impose on sex offenders convicted in states which have not adopted SORNA and those which the court

16   must impose on sex offenders convicted in states which have adopted a SORNA compliant registration

17   system.  See §§ 5D1.3(a)(7)(A) and (B).  These guidelines do not alter the requirements imposed on a

18   sex offender under § 2250(a) to register and update sex offender registration information after traveling

19   in interstate commerce.

20       In short, the court concurs with the Eighth Circuit and virtually every other United States district

21   court which has addressed this issue and holds that actual notice of the federal requirement to register

22   under SORNA was not necessary for purposes of the Due Process Clause and that knowledge of state

23   reporting requirements suffices.  Nevada's failure to implement a SORNA compliant registration

24   system prior to Benevento's travel in interstate commerce does not preclude his prosecution for failing

25   to register as a sex offender under SORNA, and Benevento's prosecution for a violation of § 2250(a)

26   does not deprive him of his due process rights to fair notice.

27   ///

28   ///

16

1

### 2.   Commerce Clause

2  The United States Constitution creates a federal government of enumerated powers.  Article I,

3  § 8.  "Every law enacted by Congress must be based on one or more of its powers enumerated in the

4  Constitution."  Morrison, 529 U.S. at 607.  Powers not delegated to the United States by the

5  Constitution are reserved to the states.  U.S. Const. Amend. X.  The Constitution does not grant

6  Congress a plenary police power.  Id.; United States v. Lopez, 514 U.S. 549, 567 (1995).  Rather, the

7  general police power is reserved to the states.  Morrison, 529 U.S. at 607.  However, Article I, § 8, of

8  the Constitution grants Congress the power "to regulate commerce with foreign Nations, among the

9  several States, and with the Indian tribes."  U.S. Const. Art. I, § 8, Cl. 3.

10  Benevento argues that the registration requirements of § 16913 of SORNA, which requires sex

11  offenders convicted of state sex offenses to register under SORNA, and 18 U.S.C. § 2250(a), which

12  makes is a federal felony offense to fail to register are "unlawful and unauthorized exercises of

13  Congress' power."  He asserts Congress lacks the authority to direct individuals convicted of purely

14  state offenses to register as sex offenders, pointing out that SORNA creates affirmative duties for sex

15  offenders who have been convicted of state criminal laws even if their offense has no relation to

16  interstate activity or interstate commerce.  He also points out that the registration requirements of

17  SORNA are directed to individuals, not the states.  Because Congress lacks the authority to direct

18  individuals convicted of purely state offenses to register as sex offenders under SORNA, and because a

19  defendant may not be prosecuted for a violation of § 2250(a) unless he is first required to register under

20  the Sex Offender Registration Notification Act, Benevento contends § 2250(a) is an unconstitutional

21  exercise of Congress' Commerce Clause power.

22  The government responds that § 2250 is a valid exercise of Congress' Commerce Clause

23  authority because the statute regulates interstate travel and also regulates activities that substantially

24  affect interstate commerce.  Both sides rely heavily on the two most recent Supreme Court opinions

25  striking down statutes under the Commerce Clause – Lopez, 514 U.S. 549, and Morrison, 529 U.S. 598.

26  In Lopez, the Supreme Court held that the Gun-Free School Zones Act of 1990, 18 U.S.C.

27  § 922(q), which made it a federal offense for any individual to knowingly possess a firearm in a school

28  zone, exceeded Congress' Commerce Clause authority.  The Lopez decision emphasized the nature of

17

1   our federal system of government which limits the power of the federal government to those

2   enumerated in the Constitution and reserves all other powers to the states.  The court noted that

3   beginning in the mid-1930s, modern era Commerce Clause jurisprudence "greatly expanded the

4   previously defined authority of Congress under that Clause."  514 U.S. at 556.  Lopez summarized

5   Commerce Clause cases in which the Supreme Court identified three broad categories of activity that

6   Congress may regulate under its commerce power.  Congress may exercise its authority under the

7   Commerce Clause by regulating: (1) "the use of the channels of interstate commerce;" (2) "the

8   instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the

9   threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate

10  commerce."  Id. at 558-559.

11         Lopez held that the Gun-Free School Zones Act of 1990: (1) did not regulate the use of the

12  channels of interstate commerce, (2) was not an attempt to prohibit the transportation of a commodity

13  through the channels of interstate commerce, and (3) was not a regulation in which Congress sought to

14  protect an instrumentality of interstate commerce.  Id. at 559.  The Court found the statute had nothing

15  to do with commerce, and it contained no jurisdictional element to ensure, through a case-by-case

16  inquiry, that the firearm possession in question affects interstate commerce.  Id. at 560-61.  The Court

17  rejected the government's argument that possession of a firearm in a school zone may result in violent

18  crime and that violent crime can be expected to affect the functioning of the national economy.  The

19  government reasoned that because the "costs of crime" has a national effect on the economy, Congress

20  could regulate not only all violent crime, but all activities that might lead to violent crime under its

21  Commerce Clause authority.  The Supreme Court noted that under this reasoning, "it is difficult to

22  perceive any limitation on federal power, even in areas such as criminal law enforcement or education

23  where States historically have been sovereign."  Id. at 564.  The Court concluded that to uphold the

24  government's position would essentially "convert congressional authority under the Commerce Clause

25  to a general police power of the sort retained by the states."  Id. at 567.

26         In Morrison, the Supreme Court held that § 13981 of the Violence Against Women Act

27  of 1994, which provided a federal civil remedy for victims of gender-motivated violence, was an

28  unconstitutional exercise of Congress' Commerce Clause power.  Relying on its earlier discussion in

18

1   Lopez, and acknowledging that modern Commerce Clause jurisprudence has expanded, the Court

2   nevertheless found Congress was not regulating any of the three broad categories of activity necessary

3   to the exercise of its Commerce Clause authority.  The court again rejected the notion that Congress

4   may regulate non-economic, violent criminal conduct based only on its aggregate effect on interstate

5   commerce, finding "the Constitution requires a distinction between what is truly national and what is

6   truly local." Id. at 617.  "The regulation and punishment of intrastate violence that is not directed at the

7   instrumentalities, channels, or goods involved in interstate commerce has always been the province of

8   the States." Id. at 618.

9        Benevento argues that the registration requirements of § 16913 of SORNA and § 2250(a)

10   violate the Commerce Clause.  With respect to § 16913, Benevento argues that SORNA's registration

11   requirements that persons convicted of state sex offenses register and keep their registration current

12   exceed Congress' Commerce Clause power because they do not regulate the channels of interstate

13   commerce, the instrumentalities of interstate commerce, or activities that substantially affect interstate

14   commerce.  The government does not address Benevento's arguments with respect to the registration

15   requirements of § 16913, but focuses its arguments on the constitutionality of § 2250(a), which the

16   government argues regulates persons who travel in interstate commerce and activities that substantially

17   affect interstate commerce.

18        The Eighth Circuit is the only Court of Appeals to have decided a defendant's Commerce

19   Clause challenge to SORNA.  In May, 535 F.3d at 921-22, the Eighth Circuit held that for a defendant

20   to be convicted of failing to register under § 2250, the government must prove he traveled in interstate

21   or foreign commerce and thereafter failed to register as required by SORNA.  The Court of Appeals

22   concluded that Congress had the power to enact SORNA under each of the three prongs of the Lopez

23   test, although it is "more easily supported by the first and second Lopez prongs."  The court

24   distinguished both Morrison and Lopez because neither act contained a jurisdictional "hook," finding

25   that SORNA had an express and clear jurisdictional element because it required proof that the

26   defendant traveled in interstate commerce or foreign commerce and thereafter failed to register as

27   required by SORNA.  May, 535 F.3d at 921-22.

28   / / /

Additionally, the overwhelming majority of district courts have held that SORNA is a valid exercise of Congress' Commerce Clause power because it regulates persons in interstate commerce. Hinen, 487 F. Supp. 2d 747; United States v. Madera, 474 F. Supp.2d 1257 (M.D. Fla. 2007), rev'd on other grounds, 528 F.3d 852 (11th Cir. 2008); United States v. Kelton, No. 5:07-cr-030-Oc-10GRJ, 2007 WL 2572204 (M.D. Fla. 2007); United States v. Sawn, No. 5:07-cr-020, 2007 WL 2344980 (W.D. Va. 2007); United States v. Gonzales, No. 5:07-cf-27-RJ, 2007 WL 2298004 (N.D. Fla. 2007); United States v. Mason, 510 F.Supp.2d 923 (M.D. Fla. 2007); United States v. Templeton, No. 06-291, 2007 WL 445481 (W.D. Okla. 2007); Lovejoy, 516 F. Supp. 2d 1032; Ditomasso, 552 F. Supp. 2d 233; United States v. Howell, No. cr-07-2023-MWB, 2007 WL 3302547 (N.D. Iowa 2007), report and recommendation adopted in part, rejected in part, 2008 WL 313200; Gould, 526 F. Supp. 2d 538; United States v. Tonj, No. cr-08-20RAW, 2008 WL 2186205 (E.D. Okla. 2008); United States v. David, No. 1:08-CR-11, 2008 WL 2045830 (W.D.N.C. 2008); United States v. Zuniga, No. 4:07-CR-3156, 2008 WL 2184118 (D. Neb. 2008); United States v. Cochran, No. cr-08-18-RAW, 2008 WL 2185427 (E.D. Okla. 2008); United States v. Utesch, 2008 WL 656066 (E.D. Tenn. 2008); United States v. Akers, 2008 WL 914493 (N.D. Ind. 2008); United States v. Nugent, 2008 WL 413273 (W.D. Mo. 2008); United States v. Shenandoah, 572 F.Supp.2d 566 (M.D. Pa. 2008); Torres, __ F. Supp. 2d __, 2008 WL 3974307 at *9; Hann, _ F. Supp. 2d __, 2008 WL 4067542 *4.  This list of district court cases is not exhaustive.

Benevento seems to argue that the government cannot establish the first element of a § 2250(a) violation, i.e., that he was required to register under SORNA because Congress lacks the power under the Commerce Clause to impose registration requirements on individuals who are convicted of purely intrastate offenses.  Benevento also argues that SORNA's registration provision, § 16913, is a an invalid exercise of Commerce Clause power because Congress cannot require individuals who are convicted of purely state law offenses to register under SORNA.  Three district court cases have held that Congress exceeded its Commerce Clause authority in enacting § 16913, the registration provision of SORNA.  Waybright, 561 F. Supp. 2d at 1162-68; United States v. Powers, 544 F. Supp. 2d 1331, 1333-36 (M.D. Fla. 2008); Thomas, 534 F. Supp. 2d at 917-22.  However, each of these decisions analyzed the registration provisions of § 16913 and criminal penalty provision of § 2250(a) of SORNA

20

1   separately.  The majority of courts have rejected this approach, finding that both § 16913 and § 2250(a)

2   are interrelated parts of the same Act.  Shenandoah, 572 F.Supp.2d at 575 (holding the provisions of

3   § 16913 and § 2250 "are components of a symbiotic statutory scheme in which there is no criminal

4   penalty unless there is a failure to register, and conversely, a failure to register cannot be enforced

5   without a criminal penalty"); Hann, ___ F. Supp. 2d ___, 2008 WL 4067542 (holding § 16913 and

6   § 2250 should be treated as "interrelated components of the larger whole of SORNA sufficient to

7   overcome any deficiencies when viewing § 16913 in isolation."); Vardaro, ___ F. Supp. 2d ___, 2008

8   WL 4155353 at *5; Shenandoah, ___ F. Supp. 2d at ___, 2008 WL 3854454 at *5 (finding

9   congressional intent underlying SORNA was to protect public safety by creating a mechanism for

10   tracking sex offenders as they move from state to state and that prosecution under § 2250 does not reach

11   purely intrastate movement of sex offenders who fail to comply with registration requirements); Hinen,

12   487 F.Supp.2d at 757-58 (holding federal jurisdiction for violating § 2250 only occurs when a person

13   required to register under SORNA travels in interstate commerce).

14         Additionally, a number of cases have held that § 16913 is an appropriate exercise of Congress'

15   power under the Necessary and Proper Clause.  Thomas, 534 F.Supp.2d at 921 (concluding that

16   § 16913 is an appropriate and reasonably adapted means by Congress to attain the legitimate end of

17   § 2250, i.e., monitoring sex offenders who cross state lines); Torres, __ F.Supp.2d ___, 2008 WL

18   3974307 *10 (W.D. Tex. 2008) (holding § 16913 is a valid exercise of authority under the Necessary

19   and Proper Clause); Vardaro, __ F.Supp.2d __, 2008 WL 4155353 at *5.

20         In short, the court concurs with the overwhelming majority of cases which have held that

21   SORNA is a valid exercise of Congress' Commerce Clause power.  Section 2250 regulates persons who

22   travel in interstate commerce and fail to register.  Although Congress has encouraged states to enact

23   SORNA compliant registration provisions, § 2250 is expressly limited to prosecuting those individuals

24   who have traveled in interstate commerce.  As such, prosecution under § 2250 does not criminalize

25   purely intrastate movement of sex offenders who fail to comply with SORNA's registration

26   requirements.  SORNA contains an express jurisdictional element that limits prosecutions to those who

27   fail to register after traveling in interstate commerce.  Under the second prong of the Lopez test,

28   Congress may regulate persons who move in interstate commerce "even though the threat may come

21

1   from only intrastate activities." 514 U.S. at 558. There is no constitutional requirement under the

2   second prong of the Lopez test that the person who travels in interstate commerce must travel with the

3   intent of violating a specific statute. Torres, __ F.Supp.2d __, 2008 WL 3974307 *10; Ditomasso,

4   552 F.Supp.2d 243. As the Ditomasso court found, "SORNA, including the criminal component,

5   prevents sex offenders from being lost in the cracks *between* state regulation, a matter which is beyond

6   the power of any one state to comprehensively address." Id. (emphasis in original). See also Vardaro,

7   __F. Supp. 2d __, 2008 WL 4155353 at *4, "the threat posed by sex offenders traveling in interstate

8   commerce is precisely the type of peril that Congress may address utilizing the Commerce Clause."

9         **3.**    ***Ex Post Facto* Clause**

10               **SORNA's Registration Requirements**

11        Article I, § 9 of the Constitution prohibits the passage of *Ex Post Facto* laws. "'[A]ny statute

12   which punishes as a crime an act previously committed, which was innocent when done; which makes

13   more burdensome the punishment for a crime, after its commission, or which deprives one charged with

14   crime of any defense available according to law at the time when the act was committed, is prohibited

15   as *ex post facto*.'" Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S.

16   167, 169-70 (1925)). "[T]he constitutional prohibition on ex post facto laws applies only to penal

17   statutes which disadvantage the offender affected by them." Collins, 497 U.S. at 41 (citations omitted).

18   To determine whether a law violates the *Ex Post Facto* Clause, the court applies a two-step test. The

19   court must first decide whether the intent of the legislature in enacting the statute was to impose

20   punishment. Doe v. Smith, 538 U.S. at 92. If so, the court's analysis ends because retroactive

21   application of a statute violates the *Ex Post Facto* Clause. Id. However, if the intent of the legislature

22   was to enact a nonpunitive and civil regulatory scheme, the court conducts the second step of the

23   analysis and decides whether the statute is so punitive either in purpose or effect as to negate the

24   legislature's intention to make it civil. Id. As the Supreme Court explained, "Because we ordinarily

25   defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent

26   and transform what has been denominated a civil remedy into a criminal penalty." Id. (internal citations

27   and quotations omitted.)

28   / / /

1    Benevento contends SORNA violates the *Ex Post Facto* Clause because the statute's in-person

2    reporting requirements are punitive, and its categorical monitoring mechanisms are excessive compared

3    to the stated objective of public safety.  The government claims SORNA is a non-punitive civil

4    regulatory scheme similar to the sex offender registration system the Supreme Court upheld Smith v.

5    Doe.  The government also argues the in-person reporting requirements promote the statutory objective

6    of maintaining current and accurate information on sex offenders.  Finally, the government asserts

7    SORNA does not punish or increase punishment of an act committed before SORNA's enactment or

8    deprive Benevento of a defense previously available, but only punishes "continuing violations involving

9    on-going failures to register or update registration after July 27, 2006."  Resp. at 19.

10    In Doe v. Smith, the Supreme Court held that courts analyzing whether sex offender registration

11    statutes violate the *Ex Post Facto* Clause should refer to the seven factor test set forth in the court's

12    prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963).  Those factors are:

13    (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has

14    historically been regarded as punishment; (3) whether the sanction comes into play only on a finding of

15    *scienter*; (4) whether the sanction's operation will promote the traditional aims of punishment –

16    retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime;

17    (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it;

18    and (7) whether the sanction appears excessive in relation to the alternative purpose assigned.  Id. at

19    168-69.  Analyzing each of these factors, the Supreme Court held that Alaska's Sex Offender

20    Registration Act did not violate the *Ex Post Facto* Clause of the Constitution.  Of the seven Mendoza-

21    Martinez factors,

22
23    The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and tradition as punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a
24    nonpunitive purpose; or is excessive with respect to this purpose.

25    Virtually every court to have addressed a defendant's *ex post facto* challenge to SORNA has

26    held that SORNA does not violate the *Ex Post Facto* Clause of the Constitution.  May, 535 F.3d at

27    919-20; Mason, 510 F.Supp.2d at 929-30; United States v. Gill, 520 F.Supp.2d 1341, 1344-46; Hinen,

28    487 F.Supp.2d at 755-57; Samuels, 543 F.Supp.2d at 676-77; Ditomasso, 552 F.Supp.2d 233; United

1   States v. Senogles, 570 F. Supp. 2d at 1152-55; Torres, __ F.Supp.2d __, 2008 WL 3974307 *17-18

2   (W.D. Tex. 2008); Shenandoah, 572 F.Supp.2d 566.

3       This court agrees that SORNA does not violate the *Ex Post Facto* Clause.  First, Congress'

4   stated intent in enacting SORNA was regulatory rather than punitive.  Congress stated that its purpose

5   was to "protect the public from sex offenders and offenders against children, and in response to the

6   vicious attacks by violent predators." 42 U.S.C. § 16901.  To accomplish this purpose, Congress

7   established a comprehensive national system for regulation of sex offenders.  As the Eighth Circuit has

8   concluded, "SORNA's registration requirement demonstrates no congressional intent to punish sex

9   offenders.  Congress describes SORNA as a public safety measure." May, 535 F.3d at 920 (citing

10   § 16901).  Additionally, except for the criminal provision contained in § 2250, the entire statute is

11   codified within Title 42 of the United States Code, which is devoted to "Public Health and Welfare,"

12   which is additional evidence of Congress' intent to create a civil regulatory statute.  Moreover, as the

13   Supreme Court noted in Doe v. Smith, "[I]mposition of restrictive measures on sex offenders adjudged

14   to be dangerous is a legitimate nonpunitive governmental objective and has been historically so

15   regarded." 538 U.S. at 93 (internal quotations omitted).  Thus, it is clear that Congress intended

16   SORNA to be a civil regulatory scheme to protect the public from sex offenders and offenders against

17   children.

18       Turning to the second prong of the framework established by the Supreme Court in Doe v.

19   Smith, the court also concludes that SORNA's statutory scheme is not so punitive either in its purpose

20   or effect as to negate Congress' intention to deem it civil.  Benevento focuses on SORNA's in-person

21   reporting requirements because the Supreme Court in Doe v. Smith reversed the Ninth Circuit based in

22   part on the Court of Appeals' mistaken belief that the Alaska statute required in-person updates.  The

23   Ninth Circuit had pointed to numerous elements of the Alaska statute – the apparent in-person

24   requirements, the disclosure of a wide variety of personal information, the publishing of the offender's

25   information on the internet, and the impact on an offender's ability to obtain employment – to conclude

26   that the Alaska statute imposed an affirmative disability on sex offenders.  In reversing the Ninth

27   Circuit, the Supreme Court found that the Alaska statute did not require in-person reporting and that the

28   other aspects of the statute did not impose an affirmative disability.  Benevento seems to argue that the

1 Ninth Circuit's decision in Doe v. Smith is still good law on the issue of whether an in-person reporting

2 requirement of a sex offender registration statute constitutes an affirmative disability for purposes of *ex*

3 *post facto* analysis.  However, in Hatton v. Bonner, 356 F.3d 955, 964 (9th Cir. 2004), the Ninth Circuit

4 held that California Penal Code § 290, California's sex offender registration statute, did not violate the

5 *Ex Post Facto* Clause.  Applying the seven factor Mendoza-Martinez test, the court found that the in-

6 person registration requirement was not enough, in it self, to turn § 290 into an affirmative disability or

7 restraint. Id.

8        The in-person reporting requirements of SORNA do not make § 16913 punitive in purpose or

9 effect.  Rather, SORNA's in-person reporting requirements, which require sex offenders to provide

10 detailed personal information and appear in person so that the jurisdiction can take a current photograph

11 and verify reportable information, accomplish the statute's purpose of establishing a comprehensive

12 national system for registration.  These requirements do not impose an affirmative restraint on sex

13 offenders' activities.  SORNA's registration requirements do not prevent sex offenders from traveling

14 in interstate commerce, changing residences, or changing their appearance.

15        Benevento also claims SORNA's categorical monitoring mechanisms are excessive compared to

16 the stated objective of public safety.  However, the Supreme Court in Doe v. Smith rejected the same

17 argument:

18        The *Ex Post Facto* Clause does not preclude a State from making reasonable
         categorical judgments that conviction of specified crimes should entail
19        particular regulatory consequences.  We have upheld against ex post facto
         challenges laws imposing regulatory burdens on individuals convicted of
20        crimes without any corresponding risk assessment.    The State's
         determination to legislate with respect to convicted sex offenders as a class,
21        rather than require individual determination of their dangerousness, does not
         make the statute a punishment under the *Ex Post Facto* Clause.
22

23 538 U.S. at 103-104.  The Supreme Court held that Alaska's categorical classification of sex offenders

24 was justified considering the "grave concerns over the high rate of recidivism among convicted sex

25 offenders and their dangerousness as a class." Id. at 103.

26        Benevento argues that his prosecution under § 2250 violates the *Ex Post Facto* Clause because

27 the penalties under § 2250 (up to ten years in prison) are greater than the state penalties (up to three

28 years in California and up to four years in Nevada) and the federal penalties (up to one year under the

1  Wetterling Act) which were in effect at the time of his conduct.  However, § 2250 only punishes

2  convicted sex offenders who travel in interstate commerce after the enactment of SORNA and who fail

3  to register or update registration as required by SORNA.  Section 2250 does not impose additional

4  punishment for Benevento's underlying sex offense.  Rather, SORNA creates a new punishment for a

5  new offense of failing to register as a sex offender under SORNA after July 27, 2006 when SORNA

6  became effective.  See LeTourneau, 534 F.Supp.2d at 720-22 ("SORNA does not punish a defendant

7  for the sexual offense committed prior to the enactment of SORNA, but rather traveling in interstate

8  commerce and failing to register after SORNA became effective." ); Gould, 526 F.Supp.2d at 548-49

9  ("[O]nly upon an offender's failure to register under SORNA, a new offense, do the enhanced penalties

10 apply."); Shenandoah, 572 F.Supp.2d at 569 ("SORNA does not impose an additional punishment for a

11 predicate sex offense.  Instead, SORNA works prospectively creating a new punishment for a new

12 offense, *i.e.*, failing to register as a sex offender under SORNA after July 27, 2006.") (internal citations

13 and quotations omitted).

14      In summary, the court concludes that because Congress' intent was to create a civil regulatory

15 scheme and because SORNA's purpose and effects are nonpunitive, the statute does not violate the *Ex*

16 *Post Facto* Clause.

17          **4.    Retroactivity**

18      Benevento claims § 2250 is impermissibly retroactive because Congress did not properly

19 designate § 2250 as retroactive.  The government asserts that SORNA is similar to the retroactive

20 registration system in Alaska that the Supreme Court upheld in Smith v. Doe.  There is split of authority

21 concerning whether a sex offender who traveled in interstate commerce during the "gap" between the

22 effective date of SORNA and the interim Attorney General's rule applying SORNA retroactively

23 violates the *Ex Post Facto* Clause.  Some courts have held that it would violate the *Ex Post Facto*

24 Clause of the Constitution to prosecute a defendant who traveled in interstate commerce during the gap

25 between SORNA's enactment and the Attorney General's interim rule.  See, e.g., Madera, 528 F.3d

26 852; Natividad-Garcia, 560 F.Supp.2d at 565.  Other courts have rejected the arguments that the *Ex*

27 *Post Facto* Clause prohibits prosecution of a defendant who travels in interstate commerce during the

28 / / /

26

1   "gap," reasoning sex offenders were required to register under SORNA when SORNA came into effect

2   on July 27, 2006.  See, e.g., May, 535 F.3d 912; Ditomasso, 552 F.Supp.2d 233.

3          The indictment in this case alleges that Benevento traveled in interstate commerce and

4   knowingly failed to register and update his registration between an unknown date in autumn 2006 to on

5   or about March 7, 2007.  The court finds the reasoning of the Eighth Circuit, and those courts which

6   have held that SORNA's registration requirements apply to all sex offenders, as defined by the Act

7   regardless of when they were convicted, persuasive.  However, because the indictment alleges a

8   violation of § 2250 occurred at some time after enactment of SORNA, and also at sometime after the

9   enactment of the Attorney General's interim rule, Benevento has not satisfied his heavy burden of

10  showing that "no set of circumstances exist under which the Act would be valid."  Morrison, 529 U.S.

11  at 608.

12                          **5.   Non-Delegation Doctrine**

13         Benevento also argues SORNA violates the non-delegation doctrine by delegating legislative

14  authority to the Attorney General.  He claims 42 U.S.C. § 16913(d) gives the Attorney General the

15  legislative authority to determine the applicability of SORNA to all sex offenders convicted before

16  its enactment.  Citing Hinen, 487 F.Supp.2d at 753, the government argues that § 16913(d) only gives

17  the Attorney General the authority to determine the statute's applicability to individuals who are

18  classified as sex offenders under SORNA who are unable to register in the jurisdiction where they

19  reside, work, or study.  The government also urges the court to adopt the view of the district court in

20  Madera, which held that SORNA merely gives the Attorney General an advisory role to the courts, with

21  the courts ultimately determining the retroactive reach of SORNA.  474 F.Supp.2d at 1261.  However,

22  after the government's response was filed, the Eleventh Circuit reversed the District Judge, finding he

23  "clearly erred by usurping the role of the Attorney General in preemptively determining SORNA's

24  retroactive application."  Madera, 528 F.3d at 857.

25         Under the non-delegation doctrine,  "Congress may not constitutionally delegate its legislative

26  power to another branch of Government."  Touby v. United States, 500 U.S. 160, 165 (1991).  "The

27  nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite

28  / / /

system of Government." Id. (internal quotations omitted).  However, Congress may seek assistance
from other branches:

> We have long recognized that the nondelegation doctrine does not prevent
> Congress from seeking assistance, within proper limits, from its coordinate
> Branches.  Thus, Congress does not violate the Constitution merely because
> it legislates in broad terms, leaving a certain degree of discretion to
> executive or judicial actors.  So long as Congress lay[s] down by legislative
> act an intelligible principle to which the person or body authorized to [act]
> is directed to conform, such legislative action is not a forbidden delegation
> of legislative power.

Touby, 500 U.S. at 165 (internal quotations omitted).  In the past eighty years, the Supreme Court has
only found that Congress impermissibly delegated its legislative authority in two cases, both related to
provisions in the National Industrial Recovery Act ("NIRA").  See Panama Refining Co. v. Ryan,
293 U.S. 388 (1935); A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935).

        Consistent with virtually every other court to address this issue, the court finds that Congress
did not unconstitutionally delegate its legislative powers to the Attorney General, and that SORNA does
not violate the non-delegation doctrine.  See, e.g., Torres, __ F.Supp.2d __, 2008 WL 3974307 at *19;
LeTourneau, 534 F.Supp.2d at 724-25; Gould, 526 F.Supp.2d at 545-46 (collecting cases); Hinen,
487 F.Supp.2d at 751-53.  The court finds that Congress provided an intelligible principle to guide the
Attorney General.  Section 16913 allows the Attorney General to determine the applicability of SORNA
to sex offenders convicted before its implementation on July 27, 2006 and to prescribe rules for sex
offenders who are unable to initially register.  Congress set forth all of SORNA's substantive
registration requirements in §§ 16911 et seq., and § 16913(d) merely gives the Attorney General the
authority to specify the applicability of SORNA to a certain class of individuals.[1]  The Attorney
General's discretion in this regard is constrained by the principles expressed in SORNA, which seeks to

---

    [1]  Courts are split concerning whether § 16913(d) only delegates to the Attorney General
authority to regulate initial registration or registration in general for sex offenders convicted prior to
SORNA.  Some courts have held that Subsection (d) only refers to initial registration.  See, e.g.,
Mason, 510 F.Supp.2d at 928; Hinen, 487 F.Supp.2d at 750-51.  Other courts hold that SORNA does not
apply to sex offenders convicted before the Attorney General issued his interim rule on February 28,
2007.  See, e.g., United States v. Smith, 528 F. Supp. 2d 615, 618 (S.D.W. Va. 2007); United States v.
Kapp, 487 F. Supp. 2d 536, 542 (M.D. Pa. 2007).

1    create a comprehensive national system for the registration of sex offenders.  Moreover, the

2    applicability of SORNA to the class of individuals described in § 16913(d) is ultimately determined by

3    the courts.  Thus, SORNA does not violate the non-delegation doctrine.

4                          **6.      Administrative Procedure Act**

5            Benevento contends the Attorney General's interim rule violates the Administrative Procedure

6    Act ("APA") because the rule was promulgated without notice and comment procedures, and no

7    exception applies.  According to Benevento, no good cause exists to waive notice and comment under

8    5 U.S.C. § 553(b) because notice and comment procedures were not "impracticable, unnecessary, or

9    contrary to the public interest," 5 U.S.C. §553(b)(3)(B), and the rule did not confer a benefit to allow

10   delaying implementation of the rule under § 553(d).  In response, the government argues the Attorney

11   General complied with the APA by incorporating into the interim rule a finding that notice and

12   comment procedures would be contrary to the public interest because the interim regulation eliminated

13   uncertainty about the applicability of SORNA's requirements and protected the public against sex

14   offenders.

15           The court finds that the Attorney General has properly invoked the good cause exception to

16   notice and comment rulemaking.  Under the APA, notice and comment procedures are required before

17   promulgating a rule unless an exception applies.  5 U.S.C. § 553.  A finding of good cause is an

18   exception to the Notice and comment requirements of the APA:

19                   (B)      when the agency for good cause finds (and incorporates the finding
                              and a brief statement of reasons therefor in the rules issued) that
20                            notice and public procedure thereon are impracticable, unnecessary,
                              or contrary to the public interest.

21   5 U.S.C. § 553(b)(B).

22           Under 5 U.S.C. § 553(d),

23                   (d)      The required publication or service of a substantive rule shall be
                              made not less than 30 days before its effective date, except–
24
                     (1)      a substantive rule which grants or recognizes an
25                            exemption or relieves a restriction;

26                   (2)      interpretative rules and statements of policy; or

27                   (3)      as otherwise provided by the agency for good cause found
                              and published with the rule.
28   Id.

                                                    29

1  "[T]he good cause exception should be interpreted narrowly . . . so that the exception will not

2  swallow the rule." Buschmann v. Schweiker, 676 F.2d 352, 357 (9th Cir. 1982) (citations omitted).

3  The court's inquiry into whether the good cause exception was properly invoked "proceeds case-by-

4  case, sensitive to the totality of the factors at play, and . . . notice and comment procedures should be

5  waived only when 'delay would do real harm.'" Natural Resources Def. Council, Inc. v. Evans,

6  316 F.3d 904, 911 (9th Cir. 2002) (citations omitted) (quoting Hawaii Helicopter Operators Ass'n v.

7  Fed. Aviation Admin., 51 F.3d 212, 214 (9th Cir. 1995)).  While emergencies are not the only situations

8  constituting good cause, they are the most common. Id.  "Notice and comment is 'impracticable' when

9  the agency cannot both follow section 553 and execute its statutory duties . . . . [and] 'unnecessary'

10  when the regulation is technical or minor." Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1484

11  (9th Cir. 1992) (internal quotations omitted).  "Furthermore, 'contrary to the public interest'

12  supplements these terms and requires that public rule-making procedures shall not prevent an agency

13  from operating." Id. (internal quotations omitted).  For example, in Hawaii Helicopters, the Ninth

14  Circuit held that the Federal Aviation Administration ("FAA") had good cause to forego notice and

15  comment procedures regarding its special operating rules for airplane and helicopter tour operators in

16  Hawaii, because of the threat to public safety posed by increasing helicopter air tour accidents. Id. at

17  214.

18        The Attorney General included the following statement of good cause for the interim rule:

19        The rule specifies that the requirements of the Sex Offender Registration and
        Notification Act apply to all sex offenders (as defined in that Act), including

20        those convicted of the offense for which registration is required prior to the
        enactment of the Act.  The applicability of the Act's requirements promotes

21        the effective tracking of sex offenders following their release, by means
        described in sections 112-17 and 119 of the Act, and the availability of

22        information concerning their identities and locations to law enforcement and
        members of the public, by means described in sections 118 and 121 of the

23        Act.

24        The immediate effectiveness of this rule is necessary to eliminate any
        possible uncertainty about the applicability of the Act's requirements--and

25        related means of enforcement, including criminal liability under 18 U.S.C.
        [§] 2250 for sex offenders who knowingly fail to register as required--to sex

26        offenders whose predicate convictions predate the enactment of SORNA.
        Delay in the implementation of this rule would impede the effective

27        registration of such sex offenders and would impair immediate efforts to
        protect the public from sex offenders who fail to register through

28        prosecution and the imposition of criminal sanctions. The resulting practical

30

1
2
3
4
5
6

dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

7
8
9

It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. [§] 553(b) or with the delayed effective date normally required under 5 U.S.C. [§] 553(d).

10  72 Fed. Reg. 8894, 8896-8897 (codified in 28 C.F.R. Part 72).

11       Here, the Attorney General's statement provides substantial justification for promulgating the

12  interim rule without notice and comment procedures.  The court could not find a case which has held

13  that the Attorney General violated the APA by his decision to promulgate SORNA regulations without

14  prior public notice or comment.  As one district court observed:

15
16
17
18

[T]he Attorney General has gone to great lengths to proffer an appropriate rationale for its decision to set aside the notice and comment requirements. . . . Indeed, it would be difficult to conjure up more compelling reasons than protecting the public from sex offenders and preventing "additional sexual assaults and child sexual abuse or exploitation offenses" to invoke the good cause exception.

19  Shenandoah, 572 F.Supp.2d at 574; see also Gould, 526 F.Supp.2d at 546; Senogles, 570 F.Supp.2d at

20  1151-52; Torres, __ F. Supp. 2d __, 2008 WL 3974307 at *20.  The Attorney General did not violate

21  the APA by promulgating the interim rule without prior notice or comment.

22              **7.    Tenth Amendment**

23       Benevento asserts § 2250 is an improper exercise of federal power over the states in violation of

24  the Tenth Amendment.  Benevento acknowledges that states are not required to implement SORNA

25  under the statute, because SORNA only offers states financial incentives to adopt SORNA-compliant

26  registries.  However, if this court finds that SORNA's registration requirements are currently in effect,

27  Benevento argues that state officials would be forced to register sex offenders pursuant to SORNA

28  before their states had enacted SORNA registration systems, which would violate the Tenth

31

1  Amendment.  The government claims § 2250 does not compel *states* to adopt registration systems in

2  compliance with SORNA, but only requires *sex offenders* to register and update their registration when

3  they travel in interstate commerce.  According to the government, SORNA does not impose any

4  additional obligations on sex offenders, such as Benevento, who are already required to register in their

5  states, nor does SORNA require states to do anything more than what each state already does under its

6  current sex offender registration laws.

7       The Tenth Amendment to the U.S. Constitution reserves all powers not delegated to the federal

8  government to the states and precludes the federal government from compelling the states or state

9  officials to enact or administer federal law.  Printz v. United States, 521 U.S. 898, 935 (1997).  SORNA

10  does not require states to implement SORNA compliant registry systems.  Rather, it offers the states

11  financial incentives to create them.  42 U.S.C. §§ 16924, 16925(d).  It is clear that Congress did not

12  violate the Tenth Amendment by giving states financial incentives to bring their individual sex offender

13  registration systems in compliance with SORNA's registration requirements.  See Waybright, 561

14  F.Supp.2d at 1168-69 (citing South Dakota v. Dole, 483 U.S. 203 (1987) (discussing Congress'

15  spending power)); Vadaro, __ F.Supp.2d __, 2008 WL 4155353 at *8; Gagnon, __ F.Supp.2d __2008

16  WL 3523181 at *5.  Moreover, a number of courts have held that a sex offender who is required to

17  register under state law has no standing to raise a Tenth Amendment claim.  See Waybright, 561

18  F.Supp.2d at 1168-69 (finding the defendant did not have standing to assert a Tenth Amendment claim

19  because he had "not suffered any injury as a result of Congress' alleged commandeering of state

20  officials." ); accord Vardaro, __ F.Supp.2d __, 2008 WL 4155353 at *8; Gagnon, __ F.Supp.2d __,

21  2008 WL 3523181 at *5.

22          **8.    Right to Travel**

23       Benevento claims § 2250 burdens his constitutional right to interstate travel without a

24  compelling state interest because the statute subjects sex offenders to federal prosecution for exercising

25  their right to travel and failing to register or update their registration.  The government responds that

26  several courts have rejected similar challenges to sex offender registration laws based on the right to

27  travel, including Doe v. Smith, 538 U.S. 84; Doe v. Miller, 405 F.3d 700 (8th Cir. 2005); Doe v.

28  Moore, 410 F.3d 1337 (11th Cir. 2005); Cutshall v. Sunquist, 193 F.3d 466 (6th Cir. 1999).  Courts

1   have also held that sex offender registration requirements are burdensome but not unreasonable, <u>Moore</u>,

2   410 F.3d at 1348, and that laws which qualify the right to travel after unlawful conduct are

3   constitutional.  <u>Jones v. Helms</u>, 452 U.S. 412, 420-23 (1981).  Furthermore, the government states

4   Benevento's right to travel is only burdened if he chooses to violate the law.

5        The right to travel from one state to another is a fundamental right derived from the Privileges

6   and Immunities Clause of the 14th Amendment.  <u>Saenz v. Roe</u>, 526 U.S. 489, 501 (1999); <u>Miller v.</u>

7   <u>Reed</u>, 176 F.3d 1202, 1205 (9th Cir. 1999).  A statute that unreasonably burdens the right to travel is

8   subject to strict scrutiny and will be struck down as unconstitutional "unless shown to be necessary to

9   promote a compelling governmental interest."  <u>Memorial Hosp. v. Maricopa County</u>, 415 U.S. 250,

10  262 (1974), (internal quotations omitted).  However, when the right to travel is implicated but not

11  unreasonably burdened, the statute need only be rationally related to a legitimate governmental interest

12  to pass constitutional muster.  <u>See Walsh v. City and County of Honolulu</u>, 423 F.Supp.2d 1094, 1102,

13  1104 (D. Haw. 2006) (<u>citing Martinez v. Bynum</u>, 461 U.S. 84, 87 (1983)).

14       Sex offenders traveling from state to state may still do so freely without first seeking permission

15  from authorities.  The inconvenience of updating one's registration upon traveling interstate is also

16  justified in light of the purpose behind the registration requirements.  Faced with a Florida statute with

17  similar registration requirements, the court in <u>Moore</u> stated,

18
19              The state has a strong interest in preventing future sexual offenses and
             alerting local law enforcement and citizens to the whereabouts of those that
             could reoffend.  Without such a requirement, sex offenders could legally
20           subvert the purpose of the statute by temporarily traveling to other
             jurisdictions for long periods of time and committing sex offenses without
21           having to notify law enforcement.

22  <u>Moore</u>, 410 F.3d at 1349.  As the <u>Shenandoah</u> decision held, "SORNA does not prevent sex offenders

23  from traveling in interstate commerce or from relocating to other states, but merely requires them to

24  notify law enforcement officials when they do so.  <u>Id.</u> at 571 (<u>citing</u> <u>Waybright</u>, 561 F.Supp.2d at

25  1169-70); <u>accord</u> <u>Senogles</u>, 2008 WL 3200178 at *8.  The court agrees with those courts which have

26  found that the federal government has a compelling interest in preventing sex offenses by keeping track

27  of the whereabouts of sex offenders.  However, at a minimum, SORNA is rationally related to a

28  legitimate government interest in tracking sex offenders as they move in interstate commerce so that

33

1    they do not subvert state registration requirements by traveling to other jurisdictions without notifying

2    local law enforcement.  The court rejects Benevento's argument that this right to travel has been

3    unlawfully burdened and finds § 2250 does not violate his right to travel.

### 9.    Equal Protection

5        In his reply, Benevento argues that prosecuting sex offenders under § 2250 for failure to register

6    as required by state law would result in disparate treatment and, therefore, violate his Equal Protection

7    rights under the Fourteenth Amendment because registration requirements vary among the states.

8    While Benevento did not raise this argument in his Motion to Dismiss, the court will nevertheless

9    consider his Equal Protection claim because he raised it in response to the government's reliance on

10   cases upholding state sex offender registration requirements in its opposition.

11       As an initial matter, the court notes that Benevento is not being prosecuted for failing to provide

12   less information than SORNA requires.  He is being prosecuted for failing to register or update his

13   registration after traveling in interstate commerce.  The Equal Protection Clause of the Fourteenth

14   Amendment applies to states, not the federal government.  It provides "No state shall . . . deny to any

15   person within its jurisdiction the equal protection of the laws."  Amendment XIV.  The Fifth

16   Amendment to the Constitution provides that "No person shall . . . be deprived of life, liberty, or

17   property, without due process of law."  While the Fifth Amendment does not explicitly contain an

18   Equal Protection Clause, the Supreme Court "has always understood that Clause to provide some

19   measure of protection against *arbitrary* treatment by the Federal Government."  However, "it is not as

20   explicit a guarantee of *equal* treatment as the Fourteenth Amendment."  Adarand Constructors, Inc., v.

21   Pena, 515 U.S. 200, 213 (1995).  The Ninth Circuit has found that "the Fifth Amendment's Due Process

22   Clause subjects the federal government to constitutional limitations that are the equivalent of those

23   imposed on the states by the Equal Protection Clause of the Fourteenth Amendment."  Consejo de

24   Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1171 n.4 (9th Cir. 2007)

25   (citing Bolling v. Sharpe, 347 U.S. 497 (1954)).

26       An Equal Protection claim requires the court to analyze whether a challenged statute burdens a

27   "suspect" or "quasi-suspect" class.  Ball v. Massanari, 254 F.3d 817, 823 (9th Cir. 2001).  "If the statute

28   employs a suspect class (such as race, religion, or national origin) or burdens the exercise of a

34

1   constitutional right, then courts must apply strict scrutiny, and ask whether the statute is narrowly

2   tailored to serve a compelling governmental interest."  Id.  Intermediate scrutiny is applied to "quasi-

3   suspect" classifications, such as those based on gender or illegitimacy.  Id.  If the statute challenged

4   does not involve either a suspect or quasi-suspect classification, "then 'rational basis' review applies, in

5   which a court must ask whether the statute is rationally-related to a legitimate government interest." Id.

6   Benevento cites no case for the proposition that sex offenders constitute a suspect or quasi-suspect

7   class.  Accordingly, § 2250 which requires sex offenders traveling in interstate commerce to register

8   and update their registration is subject to rational basis review.  Section 2250 is rationally related to the

9   legitimate government interest in protecting the public from sex offenders and offenders against

10  children by creating a comprehensive national sex offender registry to track the whereabouts of sex

11  offenders, and prevent sex offenders from circumventing the registration requirements by moving from

12  state to state.  Benevento's prosecution under § 2250 does not violate the Equal Protection Clause of the

13  Fifth Amendment.

14          For all of the foregoing reasons,

15          **IT IS ORDERED** the government's Motion to Strike (Dkt. #28) is DENIED.

16          **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

17  defendant Darian Benevento's Motion to Dismiss Count Two of the Indictment (Dkt. #23) be DENIED.

18          Dated this 4th day of November, 2008.

19

20          _____

21          PEGGY A. LEEN
            UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

35