# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:07-cr-00136-RCJ-PAL |
| *Plaintiff*, | ) | |
| vs. | ) | **ORDER** |
| DARIAN BENEVENTO, | ) | |
| *Defendant*. | ) | |

## INTRODUCTION

Before the Court is Defendant's Objections to Magistrate Judge's Report of Findings and Recommendation Re Motion to Dismiss Count II (#74). In his Motion to Dismiss Count II of his Indictment and his objection to the Magistrate Judge's Report and Recommendation, Defendant challenges the constitutionality of the Sex Offender Registration and Notification Act ("SORNA") on nine separate grounds, both facially, and in its application to him. (#23, #74). The Court has considered the pleadings and oral argument on behalf of the Defendant and the Magistrate Judge's Report and Recommendation. IT IS HEREBY ORDERED that the Court *affirms* the Magistrate Judge's Report and Recommendation, effectuating the denial of Defendant's Motion to Dismiss Count II. (#68).

## BACKGROUND

### I.    Facts

The following facts are undisputed. Defendant Darian Benevento was convicted of a sex offense in the State of California in 2003 and released from prison on parole in February of 2005.

1    Upon his release, he was registered as a sex offender in California.  The government asserts and

2    defense does not dispute that Defendant signed a California form notifying him of his obligation to

3    register as a sex offender and update this registration when he changed his address or once a year if

4    his address did not change.  The form also notified him of his lifelong obligation to know and

5    understand all changes in the law regarding sex offense registration.  The government alleges that

6    after his initial registration in California, he absconded supervision and was a fugitive between April

7    2005 and his arrest in Ontario, California in April 2007.

8        Defendant was brought into this district on a federal writ on July 20, 2007, which was

9    brought pursuant to an indictment alleging two counts against him.  The grand jury indicted him with

10   the charges of transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a) and

11   failure to register as a sex offender in violation of 18 U.S.C. § 2250(a).

12       Defendant brought a motion to dismiss Count II of the Indictment and argued that the Sex

13   Offender Registration and Notification Act was unconstitutional on its face and as applied to him

14   in violation of the following rights: Due Process; the Commerce Clause; *Ex Post Facto* Clause;

15   Article I, §§ 1,8 of the Constitution; Administrative Procedure Act; Tenth Amendment; and the right

16   to travel in interstate commerce.

17       In his opposition, Defendant raises the same arguments as his Motion to Dismiss Count II.

18   (#74).  However, he regroups his argument as to the unconstitutionality of the Act and asserts seven

19   grounds instead of nine.  He argues that (1) his due process rights were violated; (2) Congress lacked

20   the power to enact the SORNA registration requirements under the Commerce Clause; (3) SORNA's

21   registration requirements violate the *Ex Post Facto* clause of the Constitution; (4) Congress

22   impermissible delegated legislative authority to the Attorney General; (5) the Attorney General failed

23   to comply with the notice and comment provisions of the Administrative Procedure Act; (6) Section

24   2250(a) violates the Tenth Amendment; and (7) SORNA infringes on Defendant's constitutional

25   right to travel in interstate commerce.  (#74 at 4).

**DISCUSSION**

**I.    Standard of Review**

The duties of a district court in connection with a Magistrate Judge's Report and Recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  Where the parties object to a Report and Recommendation, "[a] judge of the district court shall make a *de novo* determination of those portions of the [Report and Recommendation] to which objection is made."  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). When no objections are filed, the District Court need not review *de novo* the Report and Recommendation.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (en banc).  A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Count II of the Indictment alleges Benevento violated 18 U.S.C. § 2250(a).  The essential elements for a § 2250(a) offense require the government to prove: (i) the defendant is a sex offender as defined by SORNA and, therefore, required to register under SORNA, 18 U.S.C. § 2250(a)(1); (ii) federal jurisdiction exists either because the defendant was convicted as a sex offender under federal law or because the defendant traveled in interstate or foreign commerce, 18 U.S.C. § 2250(a)(2)(A) and (2)(B); and (iii) the defendant knowingly failed to register or update his sex offender registration as required, 18 U.S.C. § 2250(a)(3), *United States v. Hinen*, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007); *United States v. Samuels*, 543 F. Supp. 2d 669, 673 (E.D. Ky. 2008).

Count II of the Indictment alleges that between an unknown date in autumn 2006 to March 7, 2007 in the State and Federal District of Nevada, Benevento: (1) was a person who was required to register under SORNA, (2) traveled in interstate commerce, and (3) knowingly failed to register and update a registration as required by SORNA in violation of § 2250(a).   Benevento's motion indicates he understands from the discovery produced that the government's theory in this case is

1   that he traveled from another state to Las Vegas, Nevada, between late 2006 and March 2007 and

2   failed to register in Nevada as required by SORNA.  The indictment in this case alleges the essential

3   elements of the crime of failing to register as required under SORNA and provides adequate detail

4   to inform Benevento of the charge to enable him to plead double jeopardy.  It is, therefore, sufficient.

5   However, Benevento challenges the constitutionality of the statute on its face and as applied to him.

6   The Magistrate Judge issued her Report and Recommendation (#68).  Benevento filed an objection

7   to it (#74), and accordingly, the Court reviews his objections *de novo*.

8   **II.      Relevant Statutory Provisions**

9        **A.      California Penal Code § 290**

10        The parties agree that Benevento was convicted of a sex offense in California in 2003,

11   sentenced to a term of imprisonment, and that when he was released from prison, he registered as

12   a sex offender as required under California Penal Code § 290.  California Penal Code § 290 imposes

13   a lifelong obligation on a sex offender to register with local law enforcement within thirty days of

14   coming into a local jurisdiction, and update the registration with any change of information within

15   ten days or once a year if there are no changes.  A person convicted of a felony sex offense who fails

16   to register under § 290 is guilty of a felony punishable by imprisonment in the state prison for sixteen

17   months, or two or three years.  Section 290.018(b).

18        **B.      Chapter 179D of the Nevada Revised Statutes**

19        In Nevada, Chapter 179D of the Nevada Revised Statutes ("N.R.S.") governs the registration

20   of sex offenders and offenders convicted of a crime against a child.  Until July 1, 2008, individuals

21   convicted of a crime against a child as defined by N.R.S. 179D.210 were required to register with

22   a local law enforcement agency and with the Division of Parole and Probation of the Department of

23   Motor Vehicles and Public Safety ("Division") if the offender resided in or was present for forty-

24   eight hours or more in the jurisdiction of a local law enforcement agency.  *See* N.R.S. § 179D.240.

25   N.R.S. 179D.250 required a sex offender to notify the Division of any change in address and provide

1  updated information within forty-eight hours after changing an address, and N.R.S. 179D.270

2  required a sex offender convicted of a crime against a child to comply with these registration

3  provisions for at least fifteen consecutive years. Violation of the offender registration provisions for

4  an offender convicted of a crime against a child was a Category D felony punishable by a term of

5  imprisonment for a minimum term of not less than one year and a maximum term of four years

6  and/or a fine of not more than $10,000. *See* N.R.S. 179D.290 and N.R.S. 193.130(2)(d).

7      N.R.S. 179D.460 required sex offenders convicted of a sexual offense as defined by

8  N.R.S. 179D.410 to register with local law enforcement agencies and the Division within forty-eight

9  hours after arriving or establishing residence in Nevada. It also required sex offenders to notify the

10  Division of any change of address and update registration information, for at least fifteen consecutive

11  years after conviction. Violation of the provisions of N.R.S. 179D.350 to 179D.550 was also a

12  Category D felony punishable from one to four years in prison and/or a fine of not more than

13  $10,000.

14      In 2007, the Nevada legislature repealed, revised, and expanded the provisions of

15  Chapter 179D to conform to the provisions of the Federal Adam Walsh Child Protection and Safety

16  Act of 2006 (the "Walsh Act"), P.L. 109-248, 120 Stat. 587 (codified primarily in 42 U.S.C. §§

17  16901-16962). The Nevada enactments were set to become effective July 1, 2008. However, two

18  lawsuits were filed challenging certain of the new registration and community notification provisions

19  passed by the Nevada legislature to conform to the provisions of the Walsh Act. On June 26, 2008,

20  Nevada State District Court Judge David Wall found that the registration and community notification

21  requirements of Assembly Bill 579 would result in significant and irreparable harm to the plaintiffs

22  and other similarly situated in Clark County, Nevada, and he granted a preliminary injunction

23  restraining and enjoining enforcement of these provisions. The order set a briefing schedule and a

24  hearing for arguments on the plaintiff's complaint for declaratory relief. *See* Order granting

25  preliminary injunction in *D.P.; WL Plaintiffs v. State of Nevada, et al.*, Case No. A564966.

1       Additionally, on June 30, 2008, the Honorable James Mahan entered an injunction in this

2 federal district in *ACLU of Nevada v. Masto*, Case No. 2:08-cv-00822-JCM-PAL, enjoining

3 enforcement of certain provisions of the legislative changes and setting a briefing schedule and

4 hearing on constitutional challenges to the Nevada acts which were enacted to comply with the

5 Walsh Act.  Judge Mahan granted a preliminary injunction following a hearing held on September

6 10, 2008, finding certain provisions of the new laws violated the *Ex Post Facto* clause of the United

7 States Constitution.  On October 7, 2008, Judge Mahan entered a revised Order granting permanent

8 injunction (#77), finding that the July 2007 legislative enactments of Assembly Bill 579 and Senate

9 Bill 471, taken together, redefine who is considered a "sex offender," the way in which sex offenders

10 are classified and monitored, and what restrictions apply to sex offenders.  He found that AB 579

11 and SB 471 do not provide any procedural due process protections for people who believe they have

12 been miscategorized as sex offenders to challenge the application of AB 579 and SB 471.  He also

13 found that the retroactive application of these bills is the equivalent of new punishment and,

14 therefore, a violation of the *Ex Post Facto* and Double Jeopardy Clauses of the U.S. Constitution,

15 as well as the Contracts Clauses of the U.S. and Nevada Constitutions.  Finally, he found that the

16 bills violated the Due Process Clause of the U.S. Constitution.  For these reasons, he entered a

17 permanent injunction enjoining the enforcement of AB 579 and SB 471.  The Attorney General filed

18 a Notice of Appeal (#83) on October 29, 2008.

19     **C.     The Jacob Wetterling Act**

20       The Jacob Wetterling Act was enacted by Congress in 1994 and is commonly referred to as

21 "Megan's Laws."  *See* 42 U.S.C. § 14071.  The Jacob Wetterling Act provided federal funding to

22 states that enacted sex offender registration laws.  It also created a federal misdemeanor failure to

23 register offense punishable by up to one year imprisonment for sex offenders who failed to register

24 in a state where they resided, worked, or were a student.  42 U.S.C. § 14072(i).  By 1996, all states

25 had enacted Megan's Laws in some form.  *See Smith v. Doe*, 538 U.S. 84, 90 (2003).

1          **D.      SORNA**

2          Congress enacted the Walsh Act on July 27, 2006.  Title 1 of the Walsh Act contains

3     SORNA and the federal failure to register as a sex offender statute.  *See* 18 U.S.C. § 2250(a).  The

4     stated purpose of the Walsh Act is "[t]o protect children from sexual exploitation and violent crime,

5     to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory

6     of Adam Walsh and other child victims."  P.L. 109-248.  The stated purpose of SORNA is "to

7     protect the public from sex offenders and offenders against children" by establishing "a

8     comprehensive national system" for the registration of sex offenders. 42 U.S.C. § 16901. "SORNA

9     is essentially an effort by Congress to close the loopholes in previous sex offender registration

10    legislation and to standardize registration across the states."  *United States v. Ditomasso*, 552 F.

11    Supp. 2d 233 (D.R.I. 2008).

12          SORNA has provisions that apply to states and other provisions that apply to individuals.

13    The Walsh Act applies to each state, the District of Columbia, native American tribal territories, and

14    other United States territories.  *See* § 16911(10), defining jurisdiction for purposes of the SORNA.

15    Each jurisdiction has until July 27, 2009 to substantially comply with the requirements of SORNA

16    or lose part of its federal funding.  42 U.S.C. §§ 16924(a), 16925(a).  SORNA requires states to

17    implement sex offender registries which must include standard information and be compatible with

18    a national electronic data base.  42 U.S.C. §§ 16912, 16918, 16919.

19          In addition to establishing a national sex offender registration system, SORNA requires sex

20    offenders to "register, and keep the registration current, in each jurisdiction where the offender

21    resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. §

22    16913(a).  SORNA defines the term "sex offender" as "an individual who was convicted of a sex

23    offense" and classifies all sex offenders into three different categories.  42 U.S.C. § 16911(1)–(4).

24    A "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact

25    with another."  *Id.*, § 16911(5)(A)(I).  A sex offender must initially register before completing a

period of imprisonment, or not later than three business days after being sentenced if not sentenced

to imprisonment.  42 U.S.C. § 16913(b).  Under § 16913(b), a sex offender must initially register:

> (1)     before completing a sentence of imprisonment with respect to
>         the offense giving rise to the registration requirement; or
>
> (2)     not later than 3 business days after being sentenced for that
>         offense, if the sex offender is not sentenced to a term of
>         imprisonment.

Thereafter, a sex offender is required to keep his or her registration current by appearing in person
in at least one jurisdiction in which the sex offender is required to register and informing the
registering agency of any changes in personal information, such as a change of name, residence, or
employment status.  *Id.* at § 16913(c).  In the event of a change of name, residence, employment, or
student status, the sex offender must appear in person within three business days of the change in
at least one jurisdiction where the person resides, works, or is a student to update his registration
information.  42 U.S.C. § 16913(c).

Section 16913(d) of SORNA delegates authority to the Attorney General of the United States
to specify the applicability of SORNA's requirements to sex offenders convicted before July 27,
2006 when SORNA took effect or its implementation in a particular jurisdiction and also to prescribe
rules for the registration of any sex offender unable to comply with the initial registration provisions
of SORNA.

On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA
to all sex offenders regardless of when they were convicted.  *See* Applicability of the Sex Offender
Registration and Notification Act, 72 Fed. Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72
(2007)).  On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting
SORNA, ("SMART Guidelines"), 72 Fed. Reg. 30,210 (May 30, 2007).  28 C.F.R. § 72.3.  SORNA
also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made
failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten

1  years imprisonment and a $250,000 fine.  Section 2250(a) supersedes the Jacob Wetterling Act,

2  which will be repealed three years after SORNA's effective date. 42 U.S.C. § 14071, P.L. 109-248,

3  Title I, § 129, 120 Stat. 600 (2006).

4  **III.   Majority of Circuits' Opinions Support Upholding SORNA**

5          The Court conducted a thorough review and analysis of the various district and appellate

6  courts' rulings on the issue of the constitutionality of SORNA.  Overall, the vast majority of courts

7  have rejected arguments similar to those of Defendant and held that SORNA is constitutional, as this

8  Court does at this time.  *See United States v. Romeo*, 2009 U.S. Dist. LEXIS 3522 (N.D. N.Y. Jan.

9  20, 2009) (denying defendant's motion to dismiss indictment and citing to the majority precedent

10  that SORNA is constitutional in comparison with the minority view that it is not); *United States v.*

11  *Contreras*, 2008 U.S. Dist. LEXIS 102994 (W.D. Tex. Dec. 19, 2008) (denying defendant's motion

12  to dismiss indictment after ruling that SORNA is not unconstitutional on any of the seven grounds

13  argued, all the same as those argued in the present case); *United States v. Summers*, 2008 U.S. Dist.

14  LEXIS 101456 (D. Neb. Dec. 16, 2008) (adopting magistrate judge's report & recommendation to

15  deny defendant's motion to dismiss indictment based on the constitutionality of SORNA); *United*

16  *States v. Lamere*, 2008 U.S. Dist. LEXIS 101116 (N.D. N.Y. Dec. 15, 2008) (denying defendant's

17  motion to dismiss indictment and holding SORNA to be constitutional); *United States v. Keleher,*

18  2008 U.S. Dist. LEXIS 105532 (E.D. Cal. Nov. 19, 2008) (denying defendant's motion to dismiss

19  indictment on a finding that SORNA is not unconstitutional).

20  **IV.   Objections to the Magistrate Judge's Report and Recommendation**

21          **A.   Due Process**

22          The Magistrate Judge concurred with the Eighth Circuit and virtually every other United

23  States district court which has addressed this issue and held that actual notice of the federal

24  requirement to register under SORNA was not necessary for purposes of the Due Process Clause and

25  that knowledge of state reporting requirements suffices. She also found that Nevada's failure to

1    implement a SORNA compliant registration system prior to Benevento's travel in interstate

2    commerce did not preclude his prosecution for failing to register as a sex offender under SORNA,

3    and Benevento's prosecution for a violation of § 2250(a) did not deprive him of his due process

4    rights to fair notice.

5        In his objection, Benevento renews his argument that because no state has implemented

6    SORNA, Benevento contends he could not have been on notice of SORNA's registration

7    requirements.  He argues that it would violate the Due Process Clause to prosecute him for failing

8    to do something that is impossible to do.  He also claims he was not on notice of SORNA's

9    registration requirements because the Attorney General has not prescribed rules pursuant to 42

10   U.S.C. § 16917(b).  Section 16917(b) mandates that "[t]he Attorney General shall prescribe rules

11   for the notification of sex offenders who cannot be registered [while in custody or at sentencing]."

12   Fundamentally, Benevento maintains that there can be no obligations under SORNA if a state has

13   not implemented SORNA.  He relies on the sex offender SMART Guidelines issued by the Attorney

14   General May 30, 2007.

15       The SMART Guidelines were promulgated by the Attorney General pursuant to SORNA's

16   direction that guidelines be provided to the states to "interpret and implement" SORNA's regulatory

17   scheme. 42 U.S.C. § 16912.  The SMART Guidelines contain a detailed discussion of how existing

18   state registries do not meet SORNA's registration standards, and thus Benevento argues that they

19   confirm that SORNA represents a regulatory scheme distinct from existing state sex offender

20   registries.  SORNA's registration provisions are more onerous, and the penalties are more severe

21   than the sex offender registration systems enacted by Nevada or California and, therefore, do not

22   provide Benevento fair notice of his SORNA obligations.  Benevento restates his argument that his

23   duty to register in Nevada cannot support a criminal prosecution under § 2250(a) because the

24   government has not alleged that he received notice of his requirement to register as a sex offender

25   under Nevada law.  Finally, he cites the Rule of Lenity, which requires construction of an ambiguous

1  statute in favor of a defendant, claiming that he could not have foreseen that § 2250(a) required him

2  to register according to state law.

3        The Due Process Clause of the Fifth Amendment provides, "No person shall . . . be deprived

4  of life, liberty, or property, without due process of law."  Among other things, the Due Process

5  Clause of the Fifth Amendment safeguards the interest in fundamental fairness through notice and

6  fair warning.  *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001). In *Lambert*, the Supreme Court held

7  that a Los Angeles felon registration ordinance violated the Due Process Clause of the Fourteenth

8  Amendment when applied to a person who had no actual knowledge of her duty to register.  355 U.S.

9  at 228 (1957).  Benevento cites *Lambert* to support his arguments that he may not be prosecuted

10  under § 2250(a) in the absence of proof he received actual knowledge of his duty to register under

11  SORNA. In *Lambert*, the Supreme Court recognized the deeply rooted principle of law that

12  ignorance of the law is no excuse.  355 U.S. at 228 (1957).  However, the court also recognized that

13  the Due Process Clause of the Fourteenth Amendment places some limits on the exercise a local

14  government's exercise of the police power.  The requirement of notice is inherent in the concept of

15  due process and "is required in a myriad of situations where a penalty or forfeiture might be suffered

16  for mere failure to act."  *Id.*  Thus, the Supreme Court held that the Due Process Clause of the

17  Fourteenth Amendment required "actual knowledge of the duty to register or proof of the probability

18  of such knowledge and subsequent failure to comply" before a conviction under the Los Angeles

19  ordinance could be upheld consistently with due process.  *Id.* at 229.  The court concluded that the

20  ordinance violated due process as applied because the defendant had no actual knowledge of the

21  registration requirement, and the "circumstances which might move one to inquire as to the necessity

22  of registration [were] completely lacking."  *Id.*

23        The case before the Court can be factually distinguished from *Lambert* in that unlike

24  Lambert, Benevento is not a "person, wholly passive and unaware of any wrongdoing" who is

25  charged in a criminal case.  He registered as a sex offender under California law upon release from

1  prison, and at that time he was notified of his lifelong obligations regarding registration.  The Jacob

2  Wetterling Act of 1994 required Benevento to register as a sex offender in any state in which he

3  resided, worked, or was a student.  By 1996, after passage of the Jacob Wetterling Act, all fifty states

4  had enacted sex offender registration acts or Megan's Laws in some form.  *Smith v. Doe*, 538 U.S.

5  at 90.  Additionally, since February 2007 and the promulgation of the Attorney General's interim

6  rule applying SORNA to all offenders, regardless of the time of their registration, Benevento had

7  constructive notice of his obligation to register after traveling, risking violation of § 2250(a).

8        Benevento has not demonstrated that it was impossible for him to register in Nevada, as he

9  has claimed.  Nevada's failure to enact a SORNA compliant registration system prior to the time of

10  Benevento's arrest does not preclude his prosecution for failing to register as a sex offender under

11  SORNA.   Sections 16913(a) makes SORNA's registration requirements applicable to all sex

12  offenders regardless of whether a state has implemented a SORNA compliant registration system.

13  Benevento's arguments about the SMART guidelines do not advance his due process argument.  The

14  Sentencing Commission has not altered the requirements imposed on a sex offender under § 2250(a)

15  to register and update sex offender registration information after traveling in interstate commerce.

16  The Court holds that Benevento's due process rights are not violated by the registration requirements

17  of SORNA.

18        Specifically, for violation of due process, the following courts have held that SORNA does

19  not violate a defendant's due process rights: *United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008);

20  *United States v. Ditomasso*, 552 F. Supp. 2d 233 (D. R.I. 2008); *United States v. Gould*, 526 F. Supp.

21  2d 538 (D. Md. 2007); *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007); *United States*

22  *v. LeTourneau*, 534 F. Supp. 2d 718 (S.D. Tex. 2008); *United States v. Samuels*, 543 F. Supp. 2d 669

23  (E.D. Ky. 2008); *United States v. Lovejoy*, 516 F. Supp. 2d 1032 (D. N.D. 2007); *United States v.*

24  *Hann*, 2008 WL 4067542 at *7 (M.D. Tenn. 2008); *United States v. Senogles*, 570 F. Supp. 2d 1134,

25  1155–59 (D. Minn. 2008); *United States v. Vardaro*, 2008 WL 4155353 at *7–8 (D. Mont. 2008).

1          **B.      Commerce Clause**

2          Regarding Defendant's Commerce Clause challenge, the Magistrate Judge concurred with

3    the overwhelming majority of cases which have held that SORNA is a valid exercise of Congress'

4    Commerce Clause power.

5          Benevento objects to a finding that the Registration Requirements under SORNA could be

6    derived from any of the three categories of Commerce Clause power.  He presents three arguments

7    to this end: (1) the Requirements are not directed to the regulation of the channels of interstate

8    commerce; (2) the Requirements cannot derive their authority from the regulation of the

9    instrumentalities of interstate commerce or uses instrumentalities of interstate commerce as

10   individuals under the Requirements are not in interstate commerce and have no connection to it; and

11   (3) the Requirements cannot be upheld based on a claim they regulate activities that substantially

12   affect interstate commerce, as economic and commercial characteristics are relevant, and the purpose

13   of SORNA to protect the public is not economic in nature.  Benevento prefers the Middle District of

14   Florida's holding in *United States v. Powers*, 554 F. Supp. 2d 1331 (M.D. Fla. 2008) that SORNA

15   does violate Congress's power under the Commerce Clause, and he urges the Court to adopt a

16   similar holding of the unconstitutionality of SORNA.

17         The United States Constitution creates a federal government of enumerated powers.  Article

18   I, § 8.  "Every law enacted by Congress must be based on one or more of its powers enumerated in

19   the Constitution."  *Morrison*, 529 U.S. at 607.  Powers not delegated to the United States by the

20   Constitution are reserved to the states.  U.S. Const. Amend. X.  The Constitution does not grant

21   Congress a plenary police power.  *Id.*; *United States v. Lopez*, 514 U.S. 549, 567 (1995).  Rather, the

22   general police power is reserved to the states.  *Morrison*, 529 U.S. at 607.  However, Article I, § 8,

23   of the Constitution grants Congress the power "to regulate commerce with foreign Nations, among

24   the several States, and with the Indian tribes."  U.S. Const. Art. I, § 8, Cl. 3.

25

1    The parties in this case rely heavily on the two most recent Supreme Court opinions striking

2   down statutes under the Commerce Clause – *Lopez*, 514 U.S. 549, and *Morrison*, 529 U.S. 598.

3    In *Lopez*, the Supreme Court held that the Gun-Free School Zones Act of 1990, 18 U.S.C.

4   § 922(q), which made it a federal offense for any individual to knowingly possess a firearm in a

5   school zone, exceeded Congress' Commerce Clause authority.  The *Lopez* decision emphasized the

6   nature of our federal system of government which limits the power of the federal government to

7   those enumerated in the Constitution and reserves all other powers to the states.  The Court noted

8   that beginning in the mid-1930s, modern era Commerce Clause jurisprudence "greatly expanded the

9   previously defined authority of Congress under that Clause."  514 U.S. at 556.  *Lopez* summarized

10  Commerce Clause cases in which the Supreme Court identified three broad categories of activity that

11  Congress may regulate under its commerce power.  Congress may exercise its authority under the

12  Commerce Clause by regulating: (1) "the use of the channels of interstate commerce;" (2) "the

13  instrumentalities of interstate commerce, or persons or things in interstate commerce, even though

14  the threat may come only from intrastate activities;" and (3) "activities that substantially affect

15  interstate commerce."  *Id.* at 558–59.

16    *Lopez* held that the Gun-Free School Zones Act of 1990: (1) did not regulate the use of the

17  channels of interstate commerce, (2) was not an attempt to prohibit the transportation of a

18  commodity through the channels of interstate commerce, and (3) was not a regulation in which

19  Congress sought to protect an instrumentality of interstate commerce.  *Id.* at 559.  The Court found

20  the statute had nothing to do with commerce, and it contained no jurisdictional element to ensure,

21  through a case-by-case inquiry, that the firearm possession in question affects interstate commerce.

22  *Id.* at 560–61.  The Court rejected the government's argument that possession of a firearm in a

23  school zone may result in violent crime and that violent crime can be expected to affect the

24  functioning of the national economy.  The government reasoned that because the "costs of crime"

25  has a national effect on the economy, Congress could regulate not only all violent crime, but all

1   activities that might lead to violent crime under its Commerce Clause authority.  The Supreme Court

2   noted that under this reasoning, "it is difficult to perceive any limitation on federal power, even in

3   areas such as criminal law enforcement or education where States historically have been sovereign."

4   *Id.* at 564.  The Court concluded that to uphold the government's position would essentially "convert

5   congressional authority under the Commerce Clause to a general police power of the sort retained

6   by the states."  *Id.* at 567.

7           In *Morrison*, the Supreme Court held that section 13981 of the Violence Against Women Act

8   of 1994, which provided a federal civil remedy for victims of gender-motivated violence, was an

9   unconstitutional exercise of Congress' Commerce Clause power.  Relying on its earlier discussion

10  in *Lopez*, and acknowledging that modern Commerce Clause jurisprudence has expanded, the Court

11  nevertheless found Congress was not regulating any of the three broad categories of activity

12  necessary to the exercise of its Commerce Clause authority.  The Court again rejected the notion that

13  Congress may regulate non-economic, violent criminal conduct based only on its aggregate effect

14  on interstate commerce, finding "the Constitution requires a distinction between what is truly

15  national and what is truly local."  *Id.* at 617.  "The regulation and punishment of intrastate violence

16  that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has

17  always been the province of the States."  *Id.* at 618.

18          The Eighth Circuit is the only Court of Appeals to have decided a defendant's Commerce

19  Clause challenge to SORNA.  In *May* the Eighth Circuit held that for a defendant to be convicted

20  of failing to register under § 2250, the government must prove he traveled in interstate or foreign

21  commerce and thereafter failed to register as required by SORNA.  535 F.3d at 921–22. The court

22  of appeals concluded that Congress had the power to enact SORNA under each of the three prongs

23  of the *Lopez* test, although it is "more easily supported by the first and second *Lopez* prongs."  The

24  court distinguished both *Morrison* and *Lopez* because neither act contained a jurisdictional "hook,"

25  finding that SORNA had an express and clear jurisdictional element because it required proof that

1   the defendant traveled in interstate commerce or foreign commerce and thereafter failed to register

2   as required by SORNA.  *May*, 535 F.3d at 921–22.

3          The majority of district courts have held that SORNA is a valid exercise of the Congress's

4   Commerce Clause power because it regulates persons in interstate commerce.  Most recently in

5   *United States v. Howell*, 2009 U.S. App. LEXIS 541 (8th Cir. Iowa Jan. 13, 2009), the court adhered

6   to the *May* holding that SORNA is constitutional under the Commerce Clause, holding that "§ 16913

7   is constitutional under Congress's authority to use the necessary and proper means to further its

8   commerce clause power," and affirming the lower court's judgment.  *See also United States v.*

9   *Lawrance*, 548 F.3d 1329 (10th Cir. 2008) (affirming the lower court's conviction of failure to

10  register as a sex offender pursuant to SORNA, discussing and rejecting three main arguments for the

11  unconstitutionality of SORNA: *Ex Post Facto*, Commerce Clause, and Due Process); *Hinen*, 487 F.

12  Supp. 2d 747; *United States v. Madera*, 474 F. Supp. 2d 1257 (M.D. Fla. 2007), *rev'd on other*

13  *grounds*, 528 F.3d 852 (11th Cir. 2008); *United States v. Kelton*, 2007 WL 2572204 (M.D. Fla.

14  2007); *United States v. Sawn*, 2007 WL 2344980 (W.D. Va. 2007); *United States v. Gonzales*, 2007

15  WL 2298004 (N.D. Fla. 2007); *United States v. Mason*, 510 F. Supp. 2d 923 (M.D. Fla. 2007);

16  *United States v. Templeton*, 2007 WL 445481 (W.D. Okla. 2007); *Lovejoy*, 516 F. Supp. 2d 1032;

17  *Ditomasso*, 552 F. Supp. 2d 233; *United States v. Howell*, 2007 WL 3302547 (N.D. Iowa 2007),

18  *report and recommendation adopted in part, rejected in part*, 2008 WL 313200; *Gould*, 526 F. Supp.

19  2d 538; *United States v. Tonj*, 2008 WL 2186205 (E.D. Okla. 2008); *United States v. David*, 2008

20  WL 2045830 (W.D.N.C. 2008); *United States v. Zuniga*, 2008 WL 2184118 (D. Neb. 2008); *United*

21  *States v. Cochran*, 2008 WL 2185427 (E.D. Okla. 2008); *United States v. Utesch*, 2008 WL 656066

22  (E.D. Tenn. 2008); *United States v. Akers*, 2008 WL 914493 (N.D. Ind. 2008); *United States v.*

23  *Nugent*, 2008 WL 413273 (W.D. Mo. 2008); *United States v. Shenandoah*, 572 F. Supp. 2d 566

24  (M.D. Pa. 2008); *Torres*, 2008 WL 3974307 at *9; *Hann*, 2008 WL 4067542 *4.

25

1       Section 2250 regulates persons who travel in interstate commerce and fail to register.

2  Although Congress has encouraged states to enact SORNA compliant registration provisions, § 2250

3  is expressly limited to prosecuting those individuals who have traveled in interstate commerce.  As

4  such, prosecution under § 2250 does not criminalize purely intrastate movement of sex offenders

5  who fail to comply with SORNA's registration requirements.  SORNA contains an express

6  jurisdictional element that limits prosecutions to those who fail to register after traveling in interstate

7  commerce.  Under the second prong of the *Lopez* test, Congress may regulate persons who move in

8  interstate commerce "even though the threat may come from only intrastate activities."  514 U.S. at

9  558.  There is no constitutional requirement under the second prong of the *Lopez* test that the person

10  who travels in interstate commerce must travel with the intent of violating a specific statute.

11  Benevento's argument that the purpose of SORNA is not economic, and accordingly, cannot fall

12  under the *Lopez* test has failed under the holding of in *May*.  535 F.3d at 921–22.  His Commerce

13  Clause argument is accepted by the Florida district court in *Meyers*, discussed below, but that finding

14  is in the minority.

15     **C.**     ***Ex Post Facto* Clause**

16       The Magistrate Judge, after detailed analysis, concluded that because Congress' intent was

17  to create a civil regulatory scheme and because SORNA's purpose and effects are nonpunitive, the

18  statute does not violate the *Ex Post Facto* Clause.  Benevento objects to her finding and proposes that

19  this case is different than the *Ex Post Facto* challenge in the *Smith* Alaska case which was rejected

20  by the Supreme Court.  *Smith v. Doe*, 538 U.S. 84 (2003).  He argues that SORNA is punitive in

21  nature in two different regards, both its in-person system and due to its excessive mechanisms in

22  relation to the stated objective of public safety.

23       Article I, § 9 of the Constitution prohibits the passage of Ex Post Facto laws.  "'[A]ny statute

24  which punishes as a crime an act previously committed, which was innocent when done; which

25  makes more burdensome the punishment for a crime, after its commission, or which deprives one

1   charged with crime of any defense available according to law at the time when the act was

2   committed, is prohibited as ex post facto.'" *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting

3   *Beazell v. Ohio*, 269 U.S. 167, 169–70 (1925)).  "[T]he constitutional prohibition on ex post facto

4   laws applies only to penal statutes which disadvantage the offender affected by them." *Collins*, 497

5   U.S. at 41 (citations omitted).  To determine whether a law violates the *Ex Post Facto* Clause, the

6   court applies a two-step test.  The court must first decide whether the intent of the legislature in

7   enacting the statute was to impose punishment.  *Doe v. Smith*, 538 U.S. at 92.  If so, the court's

8   analysis ends because retroactive application of a statute violates the *Ex Post Facto* Clause.  Id.

9   However, if the intent of the legislature was to enact a nonpunitive and civil regulatory scheme, the

10  court conducts the second step of the analysis and decides whether the statute is so punitive either

11  in purpose or effect as to negate the legislature's intention to make it civil.  *Id.*  As the Supreme

12  Court explained, "Because we ordinarily defer to the legislature's stated intent, only the clearest proof

13  will suffice to override legislative intent and transform what has been denominated a civil remedy

14  into a criminal penalty."  *Id.* (internal citations and quotations omitted.)

15      In Doe v. Smith, the Supreme Court held that courts analyzing whether sex offender

16  registration statutes violate the *Ex Post Facto* Clause should refer to the seven factor test set forth

17  in the court's prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963).  Those

18  factors are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the

19  sanction has historically been regarded as punishment; (3) whether the sanction comes into play only

20  on a finding of scienter; (4) whether the sanction's operation will promote the traditional aims of

21  punishment—retribution and deterrence; (5) whether the behavior to which the sanction applies is

22  already a crime; (6) whether an alternative purpose to which the sanction rationally may be

23  connected is assignable to it; and (7) whether the sanction appears excessive in relation to the

24  alternative purpose assigned.  *Id.* at 168–69.  Analyzing each of these factors, the Supreme Court

25

1  held that Alaska's Sex Offender Registration Act did not violate the *Ex Post Facto* Clause of the

2  Constitution.

3      In application of this two-step test to the case at hand, the Court finds that SORNA is

4  regulatory, and not punitive.  Proceeding to the second step, it is not so punitive such that it negates

5  the legislative intent for the statute to be civil in nature.  First, Congress' stated intent in enacting

6  SORNA was regulatory rather than punitive.  Congress stated that its purpose was to "protect the

7  public from sex offenders and offenders against children, and in response to the vicious attacks by

8  violent predators."  42 U.S.C. § 16901.  To accomplish this purpose, Congress established a

9  comprehensive national system for regulation of sex offenders.  As the Eighth Circuit has concluded,

10  "SORNA's registration requirement demonstrates no congressional intent to punish sex offenders.

11  Congress describes SORNA as a public safety measure."  *May*, 535 F.3d at 920 (citing § 16901).

12  Congress intended to protect the public from sex offenders through use of a civil regulatory scheme,

13  not a punitive one.

14      Turning to the second prong of the test, it is evident to the Court that SORNA's statutory

15  scheme is not so punitive either in its purpose or effect as to negate Congress' intention to deem it

16  civil.  Benevento improperly focuses on SORNA's in-person reporting requirements because the

17  Supreme Court in Doe v. Smith reversed the Ninth Circuit based in part on the Court of Appeals'

18  mistaken belief that the Alaska statute required in-person updates.

19      The in-person reporting requirements of SORNA do not make § 16913 punitive in purpose

20  or effect.  The statute's purpose is to establish a national system for sex offender registration, and

21  by requiring in-person reporting, this purpose is accomplished through the offender's providing

22  personal information that can be readily verified.  These requirements do not impose a restraint on

23  sex offender's traveling in interstate commerce, they merely require registration for such travel,

24  change of address, or change of appearance.

25

1    The majority of cases have held that SORNA does not violate the *Ex Post Facto* clause of

2    the Constitution.  *United States v. Dixon*, 2008 U.S. App. LEXIS 26820 at *15 (7th Cir. Ind. Dec.

3    22, 2008) (affirming the lower court's judgment of the constitutionality of SORNA with the

4    exception of effects of the *Ex Post Facto* clause on one of the defendants who was not given

5    reasonable time to register, causing the court to dismiss the judgment against him);  *May*, 535 F.3d

6    at 919–20; *Mason*, 510 F. Supp. 2d at 929–30; *United States v. Gill*, 520 F. Supp. 2d 1341, 1344–46;

7    *Hinen*, 487 F. Supp. 2d at 755–57; *Samuels*, 543 F. Supp. 2d at 676–77; *Ditomasso*, 552 F. Supp.

8    2d 233; *United States v. Senogles*, 570 F. Supp. 2d at 1152–55; *Torres*, 2008 WL 3974307 *17–18

9    (W.D. Tex. 2008); *Shenandoah*, 572 F. Supp. 2d 566.

10   **D.    Non-Delegation Doctrine**

11   Consistent with virtually every other court to address this issue, the Magistrate Judge found

12   that Congress did not unconstitutionally delegate its legislative powers to the Attorney General, and

13   that SORNA does not violate the non-delegation doctrine.

14   Benevento objects to her holding and incorporates his arguments in his other pleadings.  He

15   argues that the delegation is troubling as retroactive legislation is disfavored, and where it is

16   permitted, a legislative policy judgment need be manifest.  He asserts that Congress did not make

17   such a policy judgment manifest in this situation.

18   Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative

19   power to another branch of Government." Touby v. United States, 500 U.S. 160, 165 (1991). "The

20   nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite

21   system of Government." Id. (internal quotations omitted).  However, Congress may seek assistance

22   from other branches.  Touby, 500 U.S. at 165.  In the past eighty years, the Supreme Court has only

23   found that Congress impermissibly delegated its legislative authority in two cases, both related to

24   provisions in the National Industrial Recovery Act ("NIRA").  See Panama Refining Co. v. Ryan,

25   293 U.S. 388 (1935); A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935).

1    Congress provided an intelligible principle to guide the Attorney General.  Section 16913
2    allows the Attorney General to determine the applicability of SORNA to sex offenders convicted
3    before its implementation on July 27, 2006 and to prescribe rules for sex offenders who are unable
4    to initially register.  The Attorney General's discretion in this regard is constrained by the principles
5    expressed in SORNA, which seeks to create a comprehensive national system for the registration of
6    sex offenders.  Moreover, the applicability of SORNA to the class of individuals described in §
7    16913(d) is ultimately determined by the courts.  Thus, the Court finds that SORNA does not violate
8    the non-delegation doctrine.

9    This holding proves consistent with virtually every other court to address the issue.  *See, e.g.*,
10   *Torres*, 2008 WL 3974307 at *19; *LeTourneau*, 534 F. Supp. 2d at 724–25; *Gould*, 526 F. Supp. 2d
11   at 545–46; *Hinen*, 487 F. Supp. 2d at 751–53.

12   **E.    Administrative Procedure Act**

13   The Magistrate Judge held that the Attorney General's statement provides substantial
14   justification for promulgating the interim rule without notice and comment procedures.
15   Additionally, she could not find a case which has held that the Attorney General violated the APA
16   by his decision to promulgate SORNA regulations without prior public notice or comment.
17   Benevento objects to her holding and incorporates his arguments in his other pleadings.  He contends
18   that the interim rule violates the APA because the rule was promulgated without notice and comment
19   procedures, and no exception applies.

20   Under the APA, notice and comment procedures are required before promulgating a rule
21   unless an exception applies.  5 U.S.C. § 553.  A finding of good cause is an exception to the Notice
22   and comment requirements of the APA.

23   "[T]he good cause exception should be interpreted narrowly . . . so that the exception will
24   not swallow the rule."  *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982) (citations
25   omitted).  The court's inquiry into whether the good cause exception was properly invoked "proceeds

1   case-by-case, sensitive to the totality of the factors at play, and . . . notice and comment procedures

2   should be waived only when 'delay would do real harm.'" *Natural Resources Def. Council, Inc. v.*

3   *Evans*, 316 F.3d 904, 911 (9th Cir. 2002) (citations omitted) (*quoting Hawaii Helicopter Operators*

4   *Ass'n v. Fed. Aviation Admin.*, 51 F.3d 212, 214 (9th Cir. 1995)).   While emergencies are not the

5   only situations constituting good cause, they are the most common. *Id.*  "Notice and comment is

6   'impracticable' when the agency cannot both follow section 553 and execute its statutory duties . .

7   . . [and] 'unnecessary' when the regulation is technical or minor." *Riverbend Farms, Inc. v.*

8   *Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992) (internal quotations omitted).   "Furthermore,

9   'contrary to the public interest' supplements these terms and requires that public rule-making

10  procedures shall not prevent an agency from operating." *Id.* (internal quotations omitted).

11          The Court echoes the holdings of many other courts in its holding that the Attorney

12  General provided adequate rationale for its decision to set aside the notice and comment

13  requirements.   The protection of the general public and in particular, of children, is of the utmost

14  importance. *See Shenandoah*, 572 F. Supp. 2d at 574; *Gould*, 526 F. Supp. 2d at 546; *Senogles*, 570

15  F. Supp. 2d at 1151–52; *Torres*, __ F. Supp. 2d __, 2008 WL 3974307 at *20.   The Court finds that

16  the Attorney General did not violate the APA by promulgating the interim rule without prior notice

17  or comment.

18          **F.      Tenth Amendment**

19          The Magistrate Judge held that Congress did not violate the Tenth Amendment by giving

20  states financial incentives to bring their individual sex offender registration systems in compliance

21  with SORNA's registration requirements Benevento objects to her holding and incorporates his

22  arguments in his other pleadings.   He asserts that if the Court deems the Registration Requirements

23  to be in effect, state officials would be forced to register individuals under SORNA, effectuating the

24  establishment of the SORNA system before their respective states had actually chosen to implement

25  it.

1    The Tenth Amendment to the U.S. Constitution reserves all powers not delegated to the

2    federal government to the states and precludes the federal government from compelling the states

3    or state officials to enact or administer federal law.  *Printz v. United States*, 521 U.S. 898, 935

4    (1997).  Congress acted in this instance pursuant to an enumerated power and accordingly did not

5    violate the Tenth Amendment by providing financial incentives to the states.

6         In analysis of the alleged violation of the Tenth Amendment, the Court finds in accord with

7    many other courts that Congress did not violate the Tenth Amendment through financial incentives

8    to the state to bring individual sex offender registration systems in compliance with SORNA's

9    registration requirements.  *United States v. Morgan*, 2008 U.S. Dist. LEXIS 105289 (N.D. Ind. Dec.

10   31, 2008) (denying defendant's motion to dismiss indictment and discussing primarily the

11   Commerce Clause and Tenth Amendment arguments, denying that § 2250 must include an intent

12   element, ruling the registration requirements of § 16913 are permissible exercises of congressional

13   authority, and holding that when Congress acts pursuant to an enumerated power, there can be no

14   violation of the Tenth Amendment); *United States v. Yelloweagle,* 2008 U.S. Dist. LEXIS 105479

15   (D. Colo. Dec. 23, 2008) (denying defendant's motion to dismiss indictment  after assessment of

16   Commerce Clause and Tenth Amendment alleged violations); *Vadarp*, 2008 WL 4155353 at *8;

17   *Gagnon*, 2008 WL 3523181 at *5.

18        **H.    Right to Travel**

19        The Magistrate Judge held that Defendant's right to travel violation claim was not unduly

20   burdened as the government has a compelling interest in preventing sex offenses by keeping track

21   of the whereabouts of sex offenders.  Benevento objects to her holding and incorporates his

22   arguments in his other pleadings.

23        The right to travel from one state to another is a fundamental right derived from the

24   Privileges and Immunities Clause of the 14th Amendment.  *Saenz v. Roe*, 526 U.S. 489, 501 (1999);

25   *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999).  A statute that unreasonably burdens the right

1   to travel is subject to strict scrutiny and will be struck down as unconstitutional "unless shown to be

2   necessary to promote a compelling governmental interest." *Memorial Hosp. v. Maricopa County*,

3   415 U.S. 250, 262 (1974), (internal quotations omitted).   However, when the right to travel is

4   implicated but not unreasonably burdened, the statute need only be rationally related to a legitimate

5   governmental interest to pass constitutional muster. *See Walsh v. City and County of Honolulu*, 423

6   F. Supp. 2d 1094, 1102, 1104 (D. Haw. 2006) (*citing Martinez v. Bynum*, 461 U.S. 84, 87 (1983)).

7         Sex offenders traveling from state to state may still do so freely without first seeking

8   permission from authorities.   The inconvenience of updating one's registration upon traveling

9   interstate is also justified in light of the purpose behind the registration requirements.   The Court

10  agrees with those courts which have found that the federal government has a compelling interest in

11  preventing sex offenses by keeping track of the whereabouts of sex offenders. At a minimum,

12  SORNA is rationally related to a legitimate government interest in tracking sex offenders as they

13  move in interstate commerce so that they do not subvert state registration requirements by traveling

14  to other jurisdictions without notifying local law enforcement.   The Court rejects Benevento's

15  argument that this right to travel has been unlawfully burdened and finds § 2250 does not violate his

16  right to travel.

17  **V.   Minority Holdings**

18        The minority view on these issues has been expressed in *United States v. Waybright*, *United*

19  *States v. Hall*, and *United States v. Meyers*.   In all three cases, the courts held SORNA to be

20  unconstitutional.   The following courts have disagreed explicitly with the holding of

21  constitutionality: *United States v. Howell*, 2009 U.S. App. LEXIS 541 (8th Cir. Jan. 13, 2009);

22  *United States v. Lamere*, 2008 U.S. Dist. LEXIS 101116 (N.D. N.Y. Dec. 15, 2008); and *United*

23  *States v. Pena*, 582 F. Supp. 2d 851 (W.D. Tex. 2008).

24        In these recent cases, only one court has notable granted the defendant's motion to dismiss

25  the indictment on the grounds that SORNA is facially unconstitutional.   *United States v. Myers*,

2008 U.S. Dist. LEXIS 99384 (S.D. Fla. Dec. 9, 2008). In its reasoning, the court discussed the history and affect of the Commerce Clause and holds that both sections 16913 and 2250 exceed the grants of its power. The court made a distinction between the application of the first two elements of the *Lopez* test and the third, and stated that "[w]hen Congress chooses to use the term "in commerce" . . . it is communicating its choice to use the traditional and more circumscribed form of its Commerce Clause power articulated in the first two *Lopez* categories." *Id.* at *75. The court ruled that within that second element, the additional language of "persons or things in interstate commerce" must be read in conjunction with the instrumentalities of interstate commerce, and not as a separate fourth category authorizing the regulation of any person or thing that has ever crossed state lines. *Id.* at 82, 104. The court found that SORNA does not have the necessary jurisdictional nexus to interstate commerce. *Id.* at 94. In conclusion, the court held that although SORNA would aid Congress in its goal of protecting the public, it is beyond its enumerated powers. *Id.* at 105.

The Court respectfully does not follow its sister district court in its *Meyers* holding. It instead chooses to follow the precedent set forth by the circuit courts in finding that the registration requirements of SORNA are not unconstitutional on the grounds argued by Defendant. The same grounds have been argued and ruled against in virtually every courtroom in which they were brought. *See supra*.

### CONCLUSION

IT IS HEREBY ORDERED that the Court *affirms* the Magistrate Judge's Report and Recommendation, effectuating the denial of Defendant's Motion to Dismiss Count II. (#68).

Dated: April 20, 2009

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE